MARGARET MATTHEWS *v.* JACOB SONTHEIMER, Exor., &c.

1. WRIT OF ERROR: LIES FROM FINAL DECREE IN THE PROBATE COURT.—
   A writ of error lies from a final decree in the Probate Court.
2. STATUTE OF LIMITATIONS: WHEN INTERPOSED BY DEMURRER.—The bar
   of the Statute of Limitations can be interposed by demurrer only when it appears, from the dates set out in the bill, that the time prescribed by the statute has elapsed before the commencement of the suit.
3. HIGH COURT: PRACTICE: OBJECTION NOT TAKEN IN COURT BELOW NOTICED.
   —When the causes of demurrer are specially assigned in the court below, no ground of demurrer not so assigned will be noticed in this court, unless the objection be vital to the legal merits of the suit, and be also of such a character as to be incapable of being cured by amendment.
4. SAME: SAME: CASE IN JUDGMENT.—A petition in the Court of Probates, for an issue *devisavit vel non*, which incidentally refers to the will "as admitted to probate," and to "the record of the probation of the will," and exhibits a copy of the will, which is certified by the clerk of the Court of Probates of the county in which the will is properly provable to be a cor- rect copy of the will as the same remains on file and of record in his office, though inartificial in its averments in relation to the probate of the will,

Margaret Matthews *v.* Jacob Sontheimer, Exor., &c.

and bad on special demurrer, will, nevertheless, be held sufficient in this court, if the objection be here made for the first time; because, if it had been made in the court below, it is apparent the facts would have warranted an amendment curing the defect.

5. PROBATE COURT: PLEADING AND PRACTICE: AVERMENT OF FRAUD IN PETITION TO SET ASIDE A WILL: STATUTE OF LIMITATIONS: CONCEALED FRAUD.—A petition in the Court of Probates, praying an issue *devisavit vel non*, charged that the executor had for his own purposes caused the will to be written, and procured it to be signed by the testator, who was ignorant of its contents; that he had a false and fraudulent debt against the testator for a large amount, which he caused to be recognized in the will so obtained; that the will virtually gave the testator's slaves to the executor, by directing that he should take them at a cash valuation, which he could pay by means of his fraudulent claim against testator so recognized in it; that the will was the consummation of a course of fraud and imposition which the executor had been practising on the testator for several years, by pretended friendship, and by furnishing testator ardent spirits until he became imbecile and came to his death; and that the fraudulent acts of defendant were so concealed that neither petitioner nor her co-heirs could, by reasonable diligence, have discovered the fraud until it was developed by accident, about two months previous to the filing of the petition :—*Held :*

1. That the petition sufficiently charged fraud on the executor in procuring the will.

2. That the allegation of concealed fraud was sufficient to bring the case within the proviso of Art. 43, p. 434, of the Rev. Code, allowing parties, in cases of concealed fraud, two years from the time of its discovery, or from the time it might have been discovered by reasonable diligence, in which to commence proceedings to set aside the will.

3. That from the nature of the acts charged, they were secret and private, and not calculated to awaken suspicion or inquiry, and of themselves constituted concealed fraud; and hence it was unnecessary for petitioner to show diligence in detecting the frauds until some fact should be developed to put her upon inquiry.

6. PROBATE COURT: PLEADING AND PRACTICE: MULTIFARIOUSNESS.—A petition seeking to set aside a will for the fraud of the executor in obtaining it, and which recognized as just a false and fraudulent debt against testator in favor of the executor, whereby most of testator's property was secured to him, is not multifarious because it charges fraud in obtaining the will, and the falsity of the debt, and seeks discovery as to both.

7. SAME: SAME: PETITION NEED NOT BE SWORN TO.—A petition to set aside a will for a concealed fraud, which it avers was not discovered within the two years from the probate of the will prescribed by the statute, need not be sworn to by petitioner or his agent.

ERROR to the Court of Probates of Holmes county.

Margaret Matthews *v.* Jacob Sontheimer, Exor., &c..

The plaintiff in error, who was a sister and one of the heirs at law of Hugh Johnson, deceased, filed her petition in the court below, on behalf of herself and the other heirs of said Hugh, against Jacob Sontheimer, one of the executors appointed in the last will of said Hugh Johnson, for the purpose of setting aside the probate of the same.

The petition alleged that Hugh Johnson died on the 8th day of August, A. D. 1856, and that for many years he had been much addicted to the use of intoxicating drinks; that his habits in this respect had proceeded to the extent of making him imbecile in mind, and careless even of the ordinary comforts and conveniences of life, provided only he could get ardent spirits; that said Hugh Johnson, in the year 1849, and before that time, and at the time of his death, was the owner of several likely slaves, to whom he was very much attached; that in said year 1849 the said Jacob Sontheimer, then a peddler and a merchant in a small way in the town of Lexington, in said county, became acquainted with said Hugh, and noticed the likely slaves owned by him as aforesaid; that said Jacob immediately conceived the design of procuring said slaves from the said Hugh, and thereupon commenced ingratiating himself into said Hugh's favor and confidence by frequent visits to said Hugh's house, by pretended acts of friendship, by supplying him with intoxicating drinks pretendedly at his own cost, but really at the cost of said Hugh, and by using in his intercourse with said Hugh familiar and endearing epithets, calling him "Uncle Hughey;" that he soon acquired the confidence of the said Hugh, who was unmarried and without a family; that he became the factor and agent of said Hugh, selling him his goods, and receiving and disposing of the crops raised by said Hugh.

That about the 1st of January, A. D. 1856, the health of the said Hugh began to fail, and the said Jacob, still contriving to cheat the said Hugh and to become the owner of said slaves by fraudulent means, redoubled his attentions to said Hugh; that from that date to the 8th August of same year, when said Hugh died, the said Jacob Sontheimer spent most of his time with him, and furnished him with a greater quantity of brandy—say from twenty-five to thirty gallons—all of which was conveyed

to said Hugh by Sontheimer in his buggy; and that during all this time said Sontheimer never relaxed his efforts to get said slaves. And finally, for many weeks just preceding the death of said Hugh, that Sontheimer remained nearly all the time with said Hugh, both night and day, encouraging him to drink both by precept and example, hoping thereby to secure to himself the said slaves; and, when it became necessary for him to leave for a time, he left an agent with said Hugh, instructed to procure a will from said Hugh giving said Jacob said slaves; that both Sontheimer and his agent urged upon the dying man Sontheimer's friendship for him, and spoke of the "fabulous debt" which Sontheimer held against him, which ought to be paid without Sontheimer being compelled to sue therefor—that the only way this could be done was to will the slaves to Sontheimer, and that if he would do so Sontheimer would do "wonderful things" for them; that said Hugh, though willing to secure Sontheimer in his debt, the amount of which he never knew, was unwilling to disinherit his relations in favor of Sontheimer. Sontheimer then sought the aid of one of the negroes—Milly—a confidential servant of said Hugh, and promised her her freedom if she would induce her master to bequeath to him his slaves. Said Hugh then set about making his will, and two wills were written by Sontheimer's agent, neither of which gave the slaves to Sontheimer. Said Hugh, upon the persuasion of Sontheimer and his agent, did not execute either of these wills.

Said Hugh, being willing to secure Sontheimer in his debt without suit, agreed to make a will, appointing his brother, Jesse Johnson, and said Sontheimer, his executors, and providing that his property should remain on his plantation, and be worked, under the superintendence of said executors, until the debt to Sontheimer should be paid, (which debt, according to Sontheimer's representations, was all the debt he owed,) and then dividing his property among his legal heirs. This disposition of his property did not suit Sontheimer, and he hastened to Lexington and had a will written to suit his purpose, "which is the same as the copy of the one admitted to probate, herewith filed as exhibit A," except an addition thereto written by the agent of Sontheimer. This said addition embraces all of said

will, except the acknowledgment of the debt to Sontheimer, and the direction that testator's property should be valued at a cash valuation.

That the will so written was never read by, nor read to, said testator, and he was induced to sign the same by the representation of said Sontheimer and his agent that it was in accordance with his directions; that its contents were wholly unknown to said testator; that he did not see it when he signed it, a white piece of paper being placed over the written portion of it when testator affixed his signature to it, which sheet remained over it when the subscribing witnesses attested it. That the said will is not the will of said testator, but of Jacob Sontheimer, disposing of testator's property.

The petition states the residence of petitioner to be in Warren county. It further states, "that living as she does some distance from the place where the fraud was practised, a knowledge of it did not reach her till some time in December, A. D. 1859."

The petition prays for a discovery as to the will and the justice of Sontheimer's debt, and for an issue *devisavit vel non*, according to the statute, to determine whether said will, "admitted to probate as aforesaid," be the will of said Johnson or not.

The will, which was made an exhibit to the petition, is dated the 8th of August, 1856; and provides, firstly, "that whereas I am justly indebted to my friend, Jacob Sontheimer, in a large sum of money that I would wish paid as early as practicable, without any suit at law; and whereas my negroes have been kind and obedient to me, and are opposed to being separated from each other, I therefore devise, will, and direct that all of my property, both personal and real estate, of whatsoever kind or description, be appraised by three disinterested and discreet persons appointed by the Probate Court of Holmes county and State of Mississippi, at a cash valuation, and that the said Jacob Sontheimer be and he is hereby empowered to have and to take the same absolute at said valuation."

The will then directs his just debts to be paid, and divides the residue of his estate between Jesse Johnson and Martha Johnson, giving, however, to each of his heirs at law the sum of

five dollars. Jesse Johnson and Jacob Sontheimer are appointed executors.

The clerk of the Probate Court of Holmes county certifies that exhibit A is a true copy of the original, "as the same remains on file and of record in his office." This certificate is dated 24th December, 1859, and the petition was filed 21st February, 1860.

The petition is sworn to by H. H. Fultz, agent of petitioner The affidavit states that affiant has conversed with the witnesses, and examined the records of the Probate Court of Holmes county, and that he believes the facts stated in the petition.

The defendant demurred, and assigned for cause:

1. The Statute of Limitations of two years.

2. Multifariousness.

The demurrer was sustained, and leave given to petitioner to amend. Thereupon the petitioner filed an amended petition, in which she charged: "that the said actings and doings of said Sontheimer were grossly fraudulent, and his fraud in the premises was so concealed by him that neither petitioner nor any of the other heirs and distributees of said decedent could with reasonable diligence have discovered the same, until it was developed by accident on or about the month of December, A. D. 1859; that petitioner had no intimation of said fraud until the date aforesaid, and had no reason to suspect that such a crime had been committed. She is informed and believes that every thing appears fair on the record, so far as the probate of the will is concerned. The manner of obtaining the will was studiously and fraudulently kept concealed by said Sontheimer, and there being no clue left by him, it was a matter of impossibility for any one ignorant of the facts to have discovered them sooner."

The defendant again interposed a demurrer, and for cause assigned the two grounds assigned for the demurrer to the original petition; and,

3. That it is not charged in the petition or amended petition that petitioner used reasonable diligence to discover said fraud "within two years from the probation of said will."

4. Because there is no sufficient reason alleged in said amended

petition why the matters therein set forth were not alleged in the original petition.

5. Because said amended petition is not verified by affidavit, and it should be so verified by the petitioner, because the facts charged therein must be exclusively (if at all) within her own knowledge.

The demurrer was sustained, and petition dismissed. Thereupon the petitioner sued out this writ of error.

*Brooke* and *Smedes*, for plaintiff in error.

The averment in the original petition was sufficient, under the demurrer, to take the case without the two years' bar. It states that the petitioner, " living, as she does, some distance from the place where the fraud was practised, a knowledge of it did not reach her until some time in December, 1859." The petition makes a case of the grossest fraud and crime. The demurrer of course admits it, as it is unaccompanied by any answer denying it. The defendant himself was one of the executors of the will, and there is nothing on the face of the petition to show that there existed any circumstance calculated to put petitioner or her co-heirs on their guard, or to excite inquiry. The fraud itself, as charged, was, from its very nature, one of those concealed frauds provided for by our statute (Rev. Code, 434, Art. 43) which could not, with reasonable diligence, be known or discovered. But the amendment subsequently made by order of the court on sustaining the first demurrer places the matter beyond controversy. The amendment is mainly in the language of the statute, and clearly brings the case within its proviso. This case is clearly distinguishable from that of *Buckner & Stanton* v. *Calcote*, 28 Miss. R. There it appears from the bill that the complainant had means of ascertaining the existence of the frauds charged, for the court says that " from their nature as stated they were open to detection all this period of time." Opinion, p. 599. Besides, in the case at bar, there was a relation of trust and confidence existing between the party committing the fraud and those affected by it. (Opinion in *Calcote's case*, p. 597.) He was the executor of the will, and supposed, of course, to have enjoyed the confidence of the testa-

tor. See, also, *Livermore* v. *Johnson*, 27 Miss. R. 289. According to the idea of the court below, the party affected by a fraud of this sort must have been on the scent or hunt of it all the time. No matter how well-planned or concealed it may have been, he is bound to have a suspicion of it from the first, for only on suspicion could there be any inquiry, reasonable or otherwise. The results of such a rule would be, that the deepest and best-planned frauds would always escape, inasmuch as it is only such that at first excite no suspicion. Successfully kept concealed for two years they are safe, for, according to this rule, all that the perpetrator has to say after discovery is, that no suspicion has been excited and of course no steps of any kind taken to development; therefore the bar of the statute protects me. It will not do to say that the appellant might have discovered the fraud by going to the subscribing witnesses and making inquiry. To require her to do this there should have been some circumstance to excite suspicion or put her on inquiry. On the contrary, she states in her amendment that there was nothing known to her or her co-heirs to excite such suspicion; that all appeared fair on the record, so far as the probate of the will was concerned. Of course such a plan of villany as is charged would be well matured and well concealed.

There is nothing in the point of multifariousness. It is charged that the debts said to be due by the testator to Sontheimer were fraudulent. This allegation was apt and proper, to show the fraudulent intention of Sontheimer in having such a will made. The control of debts enough to cover the property made it as effectually his as if the devise had been given to him directly, and developes the fraudulent plan to get from the testator his whole estate, under the pretence of his being a large creditor. As to the amendment not being sworn to, if necessary, it could not be taken advantage of by demurrer. But we hold that the amendment was not necessary, the original petition being of itself sufficient. We may confidently assert that a case of grosser fraud and crime has never been before our courts. It is just such nefarious tampering with sick and dying men as our statute seeks to guard against by the proviso attached to the Article referred to. The statement of the facts as set forth in the

bill or petition shows of itself, from the very nature of the case, that there could have been no suspicion, and, of course, no diligence to be used.   Men committing such crimes do not usually leave any footprints of easy discernment, and to admit such defences as the one interposed here would be to license fraud and villany of the darkest dye.

*W. P. Harris,* on same side.

The point made by counsel for defendant in error, that a writ of error does not lie to a decree of the Probate Court, has been decided against them in this court.

The objection, that it does not appear from the petition that the will was ever probated, is unfounded in fact.   That important fact, though inartificially, is yet sufficiently, stated, when the objection is taken by general demurrer.   The petition in three places distinctly refers to the will as probated, and the certificate of the clerk to the copy exhibited with the petition states that this copy is true, as the same remains on file and *of record* in his office.   The petition is filed against Sontheimer as a qualified executor, citation issued against him in that character, and he appears and demurs in that character : all this presumes the regular probate of the will in common form.   Such an objection will not be noticed when raised in this court for the first time.   If it had been made in the court below, the record sufficiently shows that the inartificial statement of the probate could have been corrected by amendment.

The objection that the amended bill is not sworn to is untenable.   The statute does not require it to be verified, nor does the chancery rule in analogous cases.

The objection that the petition is barred by the Statute of Limitations is also unfounded.   If it be conceded that the statute referred to is to be treated as a Statute of Limitations—which is by no means clear—still the amended petition comes within the very words of the exception as contained in the proviso. The charge is, that the fraud was concealed by Sontheimer.   It is insisted, on behalf of defendant in error, that this concealment must be active, not passive ; that there must be some positive act of concealment done by Sontheimer in addition to the usual

means of secrecy attending the concoction and carrying out of the fraudulent plan to procure the will. This position is unfounded in law, and equally so is the position that it is necessary for petitioner to show that she used reasonable diligence to discover the fraud within the two years. Here is a will, legal on its face, executed according to the forms of law; it recites an indebtedness to Sontheimer, which is a satisfactory explanation of the devise made to him. It is regularly probated, on the oaths of the subscribing witnesses. Sontheimer, the executor, makes oath that it is the will of the testator. Every thing on the face of the record appears fair and regular. That all this is a fraudulent contrivance, a deception, on the part of Sontheimer, nowhere appears. His acts were all in secret, hidden, concealed—not only in their perpetration but also by his subsequent conduct in affirming solemnly and of record that every thing was fair and regular in his official oath. How much more concealed could the fraud have been? How otherwise could he have concealed the crime which he had perpetrated? But petitioner should have used reasonable diligence to discover the fraud. There can be no diligence in detecting a fraud unless there be something to put the party on his inquiry. The law presumes innocence and fairness in all transactions until the contrary is shown, or until something is developed which gives rise to a contrary suspicion. Shall a party presume fraud where there are no apparent indications of bad faith, and thereupon go seek for evidence to bolster up his unfounded presumption? When the fraud is from its very nature secret, as in this case, it is, without any further act by the criminal, a concealed fraud, and the question of diligence cannot arise until the party to be affected by it is put on inquiry by some fact which indicates the existence of a fraud.

The rule laid down in *Buckner & Stanton* v. *Calcote* applies only to a case like that was, where the detection of the fraud was easy, and the means open to the observation of any inquirer. There the fraud was, that bankrupts refused to put into their schedule a large amount of their property, which they kept in their possession. This possession was open and notorious. Being bankrupts, they were entitled to no property. The open

and notorious possession of a large amount of property by them, and property, too, which had belonged to them before bankruptcy, was such a patent evidence of fraud, that it could not but have put their creditors upon inquiry, and such inquiry would have led to the detection of the fraud. The case here is far different.

In *Cook* v. *Lindsey*, 34 Miss. R., this court intimates that the rigor of the doctrine in relation to fraud being engrafted as an exception upon the Statute of Limitations arises from the fact that there is no such exception in the statute; but in this statute "concealed fraud" is expressly excepted from the bar.

"Conceal" is defined, "to hide, to keep secret, cover, cloak, dissemble." It is impossible to conceive of a more perfectly concealed fraud than the palming off a spurious will on a testator, using a slave as an instrument, not divulging it, but, on the contrary, imposing it on witnesses, testator, and the court, by assuming that it is a valid will, and swearing to it.

Mr. Harris also contended that the demurrer could not be sustained because the petition did not show when the will was probated; and that, as the testator died three months before the Rev. Code went into operation, it might be that the will was probated also before the date of the Act, and if so, he insisted that it was governed by the law in existence when it was probated.

*J. M. Dyer* and *J. J. Hooker*, for defendant in error,

After insisting that a writ of error did not lie in this case, and that the petitioner failed to show that the will was probated, argued as follows:

The principal cause of demurrer, and the one upon which we mainly relied in the court below, is, that more than two years had elapsed from the probation of the will to the time of filing the petition to contest its validity. The statute provides that "if no party shall appear within two years to contest a will, the probate shall be final and forever binding;" saving to infants, &c., the same time to contest it after the removal of their disabilities. Rev. Code, p. 434, Art. 43. Mrs. Matthews, being unmarried, is, of course, barred, unless she has brought herself

within the proviso of said Article, viz.: "that in case of a concealed fraud, the limitation provided by this Article shall commence to run at, and not before, the time at which such fraud shall be or with reasonable diligence might have been first known or discovered."

It will be seen that the concurrence of two things is necessary to prevent the running of the statute, to wit: "concealed fraud," on the part of the person who obtained the will, and the use of "reasonable diligence" on the part of the heirs to discover it. There may be the most iniquitous fraud (though we think there is none in this case) in procuring a will, and yet the will will be binding on the heir two years after its probation, unless, in the mean time, he has been active and diligent in his efforts to discover the fraud. He cannot sleep upon his rights. The peace of society and the repose of the community require that there should be an end to litigation; the security of property demands it. The Statute of Limitations is, consequently, favored, and our courts, especially, have wisely enforced it rigorously.

First, then, is there any fraud charged in the petition against Sontheimer in obtaining the will? The charges, on this subject, when sifted, amount to but very little. It is true there is a great deal said about fraud, but the charges are more sound than any thing else. The main charge upon this point is, that Sontheimer, by the will, sought and obtained the negroes and the other property of the testator; but this charge is refuted by the will itself, which will be found in the record. It gives nothing to him, but directs his property to be sold, and, after the payment of his debts, the balance of the proceeds of the sale to be divided equally among certain named relations of the deceased. But, it is said, he directs Sontheimer to take his negroes and other property. True, but upon what terms? Does he give them to him? No. What then? He directs his property to be appraised "by three disinterested and discreet persons," to be appointed by the Probate Court of Holmes county, at a cash valuation, (all property of deceased persons is valued by appraisers at a cash valuation—certainly never at credit prices,) and Sontheimer is authorized, if he sees fit, to take the property at that price. What had Sontheimer to make by this? Nothing;

for he could have bought property from any other person upon the same terms. If this was a fraud, it was a profitless one for Sontheimer, and frauds are not committed for nothing. The fact that he derived no benefit from the will, we think, repels the charge of fraud.

Again, it is in substance alleged in the petition, in one place, that Johnson was induced to make the will as he did by attachment to his negroes; and in another place it is charged that a blank piece of paper was laid over the will when it was executed, and that the testator therefore did not know its nature. These allegations do not harmonize, but mutually overturn each other. The other allegations on the subject of fraud need not be noticed, as they amount to but little.

But there must not only be fraud, but it must be " concealed." " Concealed" from whom? The heirs and distributees. To conceal, there must be something done—there must be some effort to hide, to mislead, to deceive. There is no charge in the petition that Sontheimer did any thing of the kind; that he refused, after the death of Johnson, to answer any inquiry of the heirs in relation to the will, or property; that he misrepresented any fact to them in connection with either the will or property, or did any act to keep down suspicion, or avoid an investigation into his conduct in the premises. It is true he did not go to the heirs and tell them that a fraud had been committed by him, simply for the reason that he had perpetrated none. But he concealed nothing, and we insist that a party, to " conceal," in the sense of the statute, must be active, not passive; he must do something actually to deceive or throw those interested off their guard, refuse to answer proper inquiries, or withhold information which can be obtained from no other person, and if that information can be obtained by due diligence, from him or others, there is no concealment. Whatever a party, affected by any fraudulent transaction, might with ordinary care and attention have seasonably detected, he seasonably has actual knowledge of it. Angell on Lim. p. 195, sec. 5.

There is an exception to the above, and that is, where a fiduciary relation—as that of principal and agent, client and attorney, cestui que trust and trustee—existed between the parties at the

time of the commission of the pretended fraud, and then it is the duty of the party committing the fraud to disclose to those interested the true state of the transaction; but where such a relation does not exist when the pretended fraud was committed, it must be shown that some positive act of fraudulent representation or concealment towards the party injured was done, which lulled him into security, and caused him to rely upon the good faith of the other party. *Buckner & Stanton* v. *Calcote*, 6 Cush. 597. No relation of trust or confidence existed between Sontheimer and the plaintiff in error prior to or when the will was executed, and none now or never has existed between them so far as Sontheimer's rights or claims extend. Sontheimer being executor of the will creates no relation of trust between the parties as to the matters in issue now before the court. If he had sold the property, he would have been a trustee as to the fund arising from the sale; but, as to the interest claimed by him under the will, he is a mere legatee standing in no relation of trust or confidence to the heirs. We therefore say that the fraudulent concealment necessary to prevent the running of the statute does not exist in this case, for it is not alleged in the original or amended petition that Sontheimer was guilty of any positive act of concealment or misrepresentation to the petitioner, or any of her co-heirs, touching his conduct in obtaining the will; indeed, it is not even pretended that they ever made any inquiries of him about it.

But, further, there must not only be fraud and concealment, but those interested in setting aside the will must have used reasonable diligence to discover the fraud, or the statute will run. Rev. Code, p. 434, Art. 43 ; *Buckner & Stanton* v. *Calcote*, above cited ; *Young* v. *Cook*, 1 Geo. 320; *Cook et al.* v. *Lindsey*, 5 Id. 451. One party cannot sit quietly down and permit years to pass, until perhaps the witnesses of the opposing side are dead, or have departed the country, or the true state of the case is forgotten, and then charge fraud upon his adversary. This, so far from preventing fraud, would, in many instances, lead to it; and the right to make a will which is guaranteed by the law would be almost valueless : but few would or could stand, if such a practice was tolerated. Under the old code five years were

given to parties to contest a will, after its probation; now but two. By shortening the time it is clear that our legal policy is against allowing persons to attack a will at a distant period after its probation. They must bring themselves strictly within the statute, or they will not be heard.

Now let us see if the petitioner has done this. In the original petition the only excuse made for not having filed it within two years is the following, viz.: "She further states that living, as she does, some distance from the place where this fraud was practised, a knowledge of it did not reach her until some time in December, 1859," more than two years after the probation of the will. In the beginning of the petition she states that she is a citizen of Warren county in this State, and the court judicially knows that the borders of Holmes and Warren are only about fifty miles apart. The fraud is alleged to have been committed in the former. Now can it be possible that because a party resides fifty or even a hundred miles from the place where a fraud is alleged to have been committed, that he is, in these days of railroads, and steamboats, and rapid means of communication, released from all obligation to inquire into it?—from the operation of the Statute of Limitations? It seems to us that he is not. To state the proposition is to overturn it.

Take, if you please, a bill of exchange. The holder, if it is protested, is bound to give notice of it to the drawer and indorsers. Suppose he fails to do so: what excuse would it be, for his laches, to come into court and say that they resided within fifty or a hundred miles of him, but he did not exactly know where, and therefore gave no notice of the protest to them? It would be no excuse whatever. He would be told, You should have searched for their residence, inquired for it of the acceptors or drawees, or others who would probably have known where it was. The same diligence is required in this case. The reason, then, assigned in the original petition for not discovering the pretended fraud, is wholly insufficient. To allow it would be to interpolate in the statute an additional proviso, to wit: that if a party resides fifty miles from where a fraud is committed in the obtaining of a will, he shall be bound to no diligence, but may contest it whenever it suits his purpose or convenience to do so.

This interpolation the Probate Court refused to make, and sustained the demurrer to the original petition; and in doing so did not err.

Did the court err in sustaining the demurrer to the amended petition? We think not. The amendment, in substance, states that Sontheimer committed a fraud in obtaining the will, and that it was so concealed by him that the distributees could not, by reasonable diligence, have discovered it within two years after the probation of the will. How concealed, the petitioner does not pretend to say. As Sontheimer bore no relation of trust or confidence to the heirs, he was, according to the case of *Buckner & Stanton* v. *Calcote*, above cited, guilty of no concealment, unless he misrepresented some fact, or did some act to mislead them; and nothing of the sort is charged in the amendment. There is, therefore, no sufficient concealment averred in the amendment to take the case out of the operation of the statute. See also *Young* v. *Cook*, above cited.

The petitioner says the fraud could not have been discovered by reasonable diligence. We think, if there was any fraud committed, that she shows by her petition that it could have been discovered within the two years. She alleges that S. was a stranger to the deceased, and, in effect, by the will got all of his estate. If this is true it was enough to excite suspicion, and to have put her upon inquiry; and if she had, in due time, questioned the neighbors, she could have discovered the many wicked things she charges S. with doing. They were not done in a corner, and admitted of no concealment. The main fact she charges to show fraud is, that there was a blank piece of paper put over the will when it was executed, to prevent Johnson from knowing what it contained. If this was done, by applying to any of the three witnesses to the will she could have discovered it. These witnesses were there to protect both the testator and the heirs, and it was her bounden duty to have called on them, and by not having done so, she has failed to exercise due diligence. She could have applied to the draughtsman of the will, who it is alleged was an agent of S. and a participant in the fraud, (and we will here say he was not a lawyer,) and might have obtained information from him, or, if he had refused to give it, it would

have been a circumstance in her favor. But this she did not do. She could have applied to S., but did not do so. Indeed she took no steps to ferret out the pretended fraud. It certainly then cannot be said that she used any diligence at all, and there is nothing on the face of the amendment which shows that the fraud was of a character that admitted of discovery by accident alone; but, on the contrary, every allegation, both in the original petition and amendment, show that all the circumstances charged tending to prove fraud could have been detected by the slightest diligence.

She says the pretended fraud was studiously kept concealed by S. But how? Did he ever refuse to make any disclosures to her? No, for she asked him no questions about the will, or fraud; so far from that she remained in Warren, at the distance of fifty or sixty miles, and made no inquiry about it. Can a thing be said to be studiously kept concealed from another when the latter makes no inquiry about it? Certainly not; especially in this case, where S. had a right to remain silent, and was not bound to divulge any thing to her, unless questioned, not being a trustee. See *Buckner & Stanton* v. *Calcote.* We then do not think that the amendment materially changed the case; and what we have said on the first demurrer applies also to the second, and it is unnecessary to reiterate it here.

4. The petition is not sworn to by the petitioner, but by her agent. It should have been verified by her oath, because if there was a fraud she may have known it within two years after the probation of the will, and, if she did, she is of course barred; and whether or not she knew it can be ascertained by her own oath alone. Her failure to swear to it is assigned as a cause of demurrer, and we think properly.

5. The petition is multifarious. An attempt is made in it to set aside the will, and at the same time inquire into the debts claimed by S. to be due to him from J.; but about this point we care but little, as we think the others are sufficient.

HANDY, J., delivered the opinion of the court:

This was a petition in the Court of Probates of Holmes county, filed by the plaintiff in error, one of the heirs at law of Hugh

Johnson, deceased, in behalf of herself and the other heirs, against the defendant in error, for the purpose of having an instrument set aside and vacated which had been admitted to probate as the last will and testament of the said deceased.

The petitioner states, in substance, that the defendant had, by undue influence upon the deceased, and by fraudulent means, procured him to execute the will in controversy, whereby he directed the payment of a large account which the defendant had falsely raised against him, and left the defendant one of his executors. The particulars of this alleged fraudulent scheme are fully set out, and a copy of the will is exhibited. In order to show that the petition was filed in due season, the amended petition states that the fraudulent acts of the defendant were so concealed by him that neither the petitioner nor any of the other heirs could, with reasonable diligence, have discovered the same until it was developed by accident in the month of December, 1859; that every thing appears fair in the record, so far as the probate of the will is concerned, and that the manner of obtaining the said will was studiously and fraudulently kept concealed by the defendant, and there being no clue left by him, it was a matter of impossibility for any one ignorant of the facts to have discovered them sooner.

The defendant demurred to the petition, on the following grounds:

1. That it was barred by the statute, not having been filed within two years after the probate.

2. That it is not alleged that reasonable diligence was used within two years after the probate to discover the alleged fraud in procuring the will to be executed.

3. That the original and amended petitions are multifarious, in seeking to set aside the will as fraudulent, and in charging that the defendant's account against the deceased is false, and in seeking discovery as to both of these charges.

4. That the petition is not verified by the affidavit of the petitioner.

This demurrer was sustained, and the petition dismissed; and to that decree the petitioner prosecutes her writ of error.

A preliminary objection is taken in behalf of the defendant

in error, that the writ of error is irregular, because the mode of having a decree of the Court of Probates revised in this court is by appeal taken in accordance with the statute, Rev. Code, 430, Art. 28, and not by writ of error.

It is true that this statute authorizes an appeal from such decrees in the mode prescribed by it. But the statute, 563, Art. 9, also authorizes any party to " a judgment of any inferior tribunal from which a cause may be taken to this court," to "petition the clerk of the court, where such judgment *or decree* was rendered, for the issuance of a writ of error, which writ it shall be the duty of such clerk to issue," &c. The word "*judgment*" in the former part of this section is used in the more general sense, to embrace a final *adjudication of any inferior tribunal from which a cause may be taken to this court;* and this is plain from the use of the words "judgment *or decree,*" in the subsequent parts of the section, showing that the writ of error lies as well to decrees as to judgments, wherever the cause may be taken to this court for review.

Again, it is insisted that the demurrer was properly sustained, because the petition does not allege that the will had been admitted to probate, or in what court, or at what time; and that these things do not appear by the copy exhibited with the petition.

This objection is not made a ground of demurrer, and appears to be taken in this court for the first time. The demurrer being taken for causes specially assigned, no objection would be indulged here other than those specified, unless it was vital to the legal merits of the cause, and appeared to be of such a character that it could not be cured by amendment. This objection does not appear to be of that character; for the petition, in several places, refers to the will as "admitted to probate," "the record of the probation of the will," &c. The deceased had his domicile in Holmes county, the will purports on its face to have been executed there, and the copy is made and certified as made from the record of the Probate Court of that county. Under such circumstances, it is fair to presume that the facts, though not positively alleged, do exist; and as no objection was taken by

the demurrer on the ground of the absence of the proper allegations of these things, none can be now entertained here.

The first ground of demurrer, and that chiefly relied on, is, that the petition was not filed within two years from the date of the probate of the will, and was, therefore, too late, under the provision of the statute, Rev. Code, 434, Art. 43. But this objection could not be maintained; for the date of the probate is not stated in the petition nor in the copy of the will exhibited with it. Though the objection might have been set up by plea or answer, yet, as it did not appear in the petition or exhibit, it could not be taken advantage of by demurrer.

But the question is presented and argued by counsel for both parties, whether—assuming that the matter comes within the operation of the statute in the Rev. Code, 434, Art. 43, as to the period within which the petition must have been filed, and that it was not filed within two years from the date of the probate— the averments of the petition as to concealment of the alleged fraud and the excuse for not ascertaining it and filing the petition at an earlier time and within the period prescribed, are sufficient to bring it within the proviso of the statute. This question is raised by the second ground of demurrer.

In discussing this, counsel for the defendant in error insists, in the first place, that the petition really contains no charge of fraud.

If this objection were properly the subject of consideration under the causes of demurrer assigned—as it appears not to be —the allegations of the petition sufficiently charge fraud in procuring the will, on the part of the defendant. They are, in substance, that he had a false and pretended debt against the testator to a large amount, and, to suit his own purposes, had the will written and caused it to be executed by the testator, who was totally ignorant of its contents. By this will the defendant was made one of the executors, and was authorized to take all the testator's property at the amount of a cash valuation to be made by commissioners to be appointed by the Court of Probates for that purpose; and after paying all his debts, to distribute the balance to his relatives in a specified way. The petition charges that this will virtually gave the defendant the slaves of

the testator by means of the large debt which he had falsely brought forward against him, which he was enabled to use to that end, as he was executor of the will, and that it was the consummation of a course of fraud and imposition which the defendant had been practising upon the testator for several years, by pretended friendship, furnishing him with ardent spirits, and encouraging him to drink until he became imbecile and came to his death.

The proviso of the statute is, "that in case of a concealed fraud, the limitation provided by this article shall commence to run at, and not before, the time at which such fraud shall be or with reasonable diligence might have been first known or discovered." The averments of the petition appear to come fully within this proviso. They are, that the fraudulent acts of the defendant were so concealed by him that neither the petitioner nor any of the other heirs could with reasonable diligence have discovered the same, until it was developed by accident in December, 1859. It is not stated how the fraudulent acts were concealed, nor was that practicable, from their nature as charged in the petition. As alleged, they were in their nature secret acts, not open to view, and leaving no trace by which they could be detected. There appears to have been nothing remaining to bring to the notice of the petitioner the undue influence exerted by the defendant upon the testator—nothing to give her notice of the false account which he had raised against the testator, or of the mode in which he expected to get possession of the property as charged in the petition. Every thing appeared fair on record, and all the ordinary means of obtaining any knowledge of the facts constituting the fraud were beyond the power of the petitioner. The only source of information which the nature of the case could suggest are the subscribing witnesses to the will, and it does not appear, and is not probable, that they had any knowledge of the principal facts alleged to constitute the fraud. Under such circumstances, it is very manifest that the alleged fraudulent facts consist entirely of private and secret acts of the party charged, of which no trace was left at all calculated, for aught that appears, to awaken suspicion or to excite inquiry.

Hence the allegations by way of excuse for not filing the petition within the usual time prescribed are amply sufficient.

The circumstances of fraud in this case are quite different from those in the case of *Buckner & Stanton* v. *Calcote*, 28 Miss. R. 432. In that case the parties were charged with having concealed and secreted their property, of which, to a large amount, they continued in possession, and had fraudulently failed to return it in their bankrupt schedules. And with reference to this state of case it is said: "For aught that appears by the bill, the frauds might have been as well discovered by the exercise of due diligence within eighteen months after their commission, as within eighteen months before the filing of the bill, (the period of discovery stated in the bill.) From their nature, as charged, they were open and entirely capable at all times of being detected." 598. But when it appears, from the nature of the fraud charged, that it consists, in its principal characteristics, of secret acts of the party and his agents, not open to observation, with nothing reasonably leading to inquiry or suspicion, it would be to hold such a fraud its own protection to say that the averments of excuse in this case were not sufficient, and to render the proviso of the statute nugatory.

The objections on the ground of multifariousness and the want of an affidavit are not tenable. As to the former, the allegation as to the false account is but part of the circumstances constituting the alleged fraud; and as to the latter, the statute does not require an affidavit to the petition, nor is it necessary, according to the practice in analogous cases. But if it were necessary, it is made by the agent of the petitioner, who is empowered by the statute to make it. Rev. Code, 516, Art. 223.

The decree is reversed, the demurrer overruled, and the cause remanded, and the defendant required to answer the petition within sixty days.