## T. D. MAGEE et al. v. JOHN LEGGETT, Adm'r, etc.

1. LIMITATIONS—SURETIES.—It is too well settled to admit of controversy that at
law, in favor of a surety, the cause of action accrues and the statute begins to run
when the surety pays the money.

2. SURETIES—SUBROGATION.—A surety who pays all the judgment debt of his prin-
cipal, or who pays part of it and the principal the balance, will be subrogated to all the
benefits and privileges which the creditor had, by means of his judgment against
the principal, and made to stand in the judgment creditor's shoes as against the
principal debtor.   But otherwise, if the surety has made only part payment and any
balance remains unpaid, because, in that case, the surety has not entirely divested the
rights of the creditor.

APPEAL from the chancery court of Covington county.
GOWAN, Chancellor.

The estate of Stewart, deceased, recovered a judg-
ment of the circuit court against the estate of Joshua
R. White, deceased, and the estate of J. B. Hathorn,
deceased, founded on a promissory note executed by

said Hathorn and White in their lifetime, Hathorn having signed the note as surety for White.

McNair, administrator of Stewart, transferred an interest, amounting to $160, in this judgment, to Wilkinson, who transferred this interest to Mrs. M. C. Magee, the present holder of this interest, leaving $406.20 of the judgment remaining due to McNair, administrator, besides interest thereon at ten per cent per annum, from September 1857, the date of the judgment.

On the 26th September, 1866, the administrator of Hathorn, surety, paid to McNair $400, as a compromise and to procure a release of the estate of Hathorn.

On the 6th of October, 1870, Leggett, administrator *de bonis non* of the estate of Hathorn, filed his bill in the chancery court against the heirs-at-law of said White, deceased, demanding a decree against them for the amount so paid as a compromise to procure a release.

The adult heirs, defendants, demurred to the bill, which demurrer was overruled.

The complainant then filed an amended bill, being an exact copy of the original bill, except it contained a new allegation in the words following, to wit: " Your orator further represents and shows that the debt of your orator and that due Mary C. McGee are the only debts existing against the estate of the said White."

The adult defendants, heirs-at-law, also demurred to this amended bill, which demurrer was overruled; from the decree overruling their demurrer they appealed.

*Bentonville Taylor*, for appellants.

The claim of the estate of Hathorn for re-imbursement for this sum of $400, was simply an open account, not in writing, for so much money paid by the surety for the principal debtor, paid as a compromise to procure a release from suretyship, and did not extinguish

the entire debt or release the principal debtor, and was not paid by the consent of the principal debtor's legal representative or heirs, and therefore does not create any obligation on them to re-imburse the estate of the surety.

But if it created an obligation to re-imburse the estate of the surety, the claim to re-imbursement is but an open account, and is barred by the statute of limitations of three years. The defendants set up this statute of limitations by demurrer to the amended bill. Scott v. Nichols, 27 Miss. 94; Marshall v. Hudson, 9 Yerg. 57; Maxey v. Carter, 10 ib. 521; Dickson v. Miller, 11 S. & M. 594; Matthews v. Southeimer, 39 Miss. 174; Nevitt v. Bacon, 32 ib. 212.

"A surety, until he pays the money for his principal, has no available demand against him which amounts either to a set-off or an equitable discount." Walker v. McKay, 2 Metc. (Ky.) 294.

"A surety cannot, either at law or in equity, call for an assignment of the claim of his creditor against his principal, or be clothed, by operation of law and on principles of equity, with the rights of an assignee of such claim, unless he has paid the entire claim of the creditor. A *pro tanto* assignment, by way of substitution or subrogation, is not known or allowed." Gannett v. Blodgett, 39 N. H. 150.

"A surety whose liability is fixed and matured, may pay at once, without execution; and his right of contribution from a co-surety accrues at, and only at, the time of payment." 34 Ala. 505.

The cause of action of a surety against his principal accrues when the money is paid. Walker v. Lathrop, 1 Clarke (Iowa), 133.

The right of action of a surety paying the debt against his principal and co-sureties for contribution, under the Kentucky statute of limitations, is barred in

five years from the time the money was paid.   Robinson v. Jennings, 7 Bush (Ky.), 630.

In a suit for re-imbursement by the surety who paid the note, the limitation of six years applies.   Norton v. Hall, 41 Vt. 471.

If the surety had paid the entire judgment, he would have been entitled to subrogation to the rights of the judgment creditor, and the statute of limitations of judgments would apply.

If he pays the entire note he is entitled to a transfer of the note, and the statute of six years will apply.

If he only pays a part of the note, the doctrine of subrogation will not apply; his claim to re-imbursement is only an implied *assumpsit*, an open account, and the statute of three years applies.

An administrator who pays, as surety, a part of the purchase money of land bought by his intestate, is not entitled to be subrogated to the vendor's lien upon land.   McNeill, adm'r v. McNeill's creditors, 36 Ala. 109.

Even if the claim for re-imbursement were not barred by the statute of three years, still equity has no jurisdiction; for a recovery in that case could be had in a court of common law upon the implied promise of the principal to re-imburse the surety.

The bill shows that personalty of the estate of White, the principal debtor, came to the hands of his administrator, and was exhausted in the payment of White's debts, yet that no part of the debt here sued for had been paid by White's administrator; hence, it follows that White's administrator should have also paid on this claim *pro rata* with the other claims; and having failed to do so, he committed *devastavit*, and the complainant should have pushed his bond to insolvency; and having done this, he could proceed against the heir for the residue remaining unpaid after exhausting all remedies on the bond.

The bill shows that Mrs. M. C. Magee, the equitable owner by assignment and transfer of $160 of the judgment, is also a creditor of White's estate. This being a creditor's bill, complainant should have offered to allow her to become a co-complainant; he who seeks equity, must offer equity to all interested, and the bill should have been filed in behalf of all creditors of White's estate; this is a familar principle.

"A surety, paying the debt of his principal, is entitled to the benefit of all the security and the lien of the creditor; but he cannot extend the lien or security beyond their effect and operation in the hands of the creditor;" Dozier v. Lewis, 27 Miss. 679; but, in this case, Hathorn's estate did not pay or extinguish the entire debt, and the judgment constituting no lien was not enrolled. That complainant's remedy is at law, see 1 Story Eq., § 495.

The surety is not subrogated to the rights of the creditor, "but he is in fact, as well as in law, to be deemed only as having paid money for the principal upon the footing of an implied contract of indemnity subsisting between them." 1 Story Eq., § 499 *d;* ib., § 499, *c.*

No counsel for appellees.

SIMRALL, J. :

On the 26th September, 1866, A. S. Harper, administrator of Hathorn, deceased, compromised with McNair, administrator of Stewart, deceased, the liability of his intestate, as surety on a note merged into a judgment, by paying $400, part of the debt, in consideration of which his intestate's estate was released and discharged from the debt. The bill seeks subrogation, *pro tanto,* to the rights of the creditor, to whom the payment was made.

The first question to be disposed of is, when does the

statute of limitations begin to run? that being set up as one of the special causes of demurrer.

If the complainant should be entitled to substitution at all to the judgment and its privileges, must suit be brought within the time limited for the *assumpsit* at law on the implied promise of indemnity?

It is too well settled to admit of controversy, that at law the cause of action in favor of the surety accrues when he pays the money, and from that time the statute of limitations begins to run. Scott v. Nichols, 27 Miss. 94; Marshall v. Hudson, 38 ib. 57; Dixon v. Miller, 11 S. & M. 594; Mathews v. Southeimer, 39 Miss. 174.

Conceding the surety may go into a court of chancery to be refunded what he has paid on account of his principal, the remedy is governed as to time, as in the suit at law. But if more be asked than the ordinary monied decree, as in this case, that the complainant shall have the benefit and privileges of the judgment, other considerations present themselves as to the propriety of that relief.

It was said in 4 Rand. 444, and repeated in Growing v. Bland's, adm'r and heirs, 2 How. 815: " The surety is entitled to every remedy which the creditor has against the principal debtor; to enforce every security; to stand completely in the place of the creditor." In Conway v. Strong, 24 Miss. 666; Bowen et ux. v. Hoskins, 45 ib. 186; Osborn v. Noble, 46 ib. 453, the principle is declared that a secondary party, who has been obliged to discharge the debt, has a right in equity to occupy the place of the creditor, and be subrogated to his rights against the party primarily liable, as to any lien or security which the creditor may have.

But it appears from the allegations of the bill, that the complainant's intestate paid only $400, part of the judgment; that the creditor assigned $160 of its amount, which by *mesne* assignment now belongs to

Mrs. Magee. It thus appears that part of the judgment still belongs to the original creditor, and part to Mrs. Magee. It is plain that both of these parties are entitled to satisfaction of what may be respectively due them, out of the property pointed out in the bill, in preference to the re-imbursement to the complainant, from that source, of what the estate which he represents has paid. Nor is it so much as averred that the property is of value to satisfy these claims.

In Berry, use of Burgess v. Nicholls, 2 Harr. & Johns. 508; Merryman v. State, etc., 5 ib. 423, the sureties who had paid the amount of the judgments were permitted to sue out execution in the name of the judgment creditor, for their use, against the principal debtor. Equity treated the payment by the surety as working, by operation of law, a transfer of the judgment for his use, so as to give him the same process for recovery of the money which the creditor had. So far as we have examined, we do not find well-considered judgments holding that there can be a partial transfer by legal operation. A partial payment does not have that effect, unless it be a balance which satisfies what is due the creditor. In Hollinsworth v. Floyd, 2 Harris & Gill, 91, such assignment was repudiated and denied, where the surety had paid but part of the debt, and still owed a balance to the creditor; and also rejected as an anomaly a *pro tanto* assignment, the effect of which would be to give distinct interests in the same debt to both creditor and debtor.

The assignment to Mrs. Magee of part of the judgment, gives her an equal right *pro tanto* with the creditor. She would be protected in a court of law, in the use of its process to levy the debt compulsorily. If the complainant could be relieved in the mode specifically prayed, his right under the judgment would be subordinate to Mrs. Magee, and also to the creditor for

any balance· due him. It is distinctly declared in Garnett v. Blodgett, 39 N. H. 152, "that the surety's right could only accrue upon his payment of the whole amount of the creditor's claim." "The creditor's rights must be entirely divested before another can be substituted by mere operation of law, in his place, so as to have them vest in him." Stamford Bank v. Blodget, 15 Conn. 437; Belcher v. Hartford Bank, 15 ib. 381; Union Bank of Maryland v. Edwards, 1 Gill & Johns. 346. In Kyner v. Kyner, 6 Watts, 227, the· court say: "There shall be no interference with the creditor's rights or securities, which by possibility might prejudice or embarrass him in the collection of the residue of his debt. The surety must satisfy first his entire debt." We do not understand the rule as requiring that the "surety" must make entire payment; it is enough if the creditor has been fully paid, part by the principal debtor, and part by the surety. In such case, subrogation will accrue *pro tanto* to the extent of his payment. Such would be the effect, if two or more sureties contributed in equal or unequal amounts to the payment. Bank of Pennsylvania v. Potaces, 10 Watts, 152; Hardcastle v. Commercial Bank, 1 Harring. 374. If these adjudications affirm the principle correctly, as we think they do, then the complainant cannot be substituted to the place of the creditor against the principal debtor, because the surety has not entirely divested the rights of the creditor or his assignee, Mrs. Magee.

But notwithstanding, he sustains the relation to the principal debtor, of a creditor, for money paid on his account, which the debtor, *ex equo et bono*, is under a duty to refund, and may recover in this suit unless the remedy is barred. As we have seen, the cause of action arises from the payment to the creditor. In this case, the payment was made the 26th of September, 1866. The statute of limitations was then suspended,

and so continued until twelve months after the close of the war. That was determined by the President's proclamation to have ended the 2d of April, 1866. The statute begun then to run the 2d of April, 1867. The three years within which suit might be brought, expired the 2d of April, 1870. The bill was filed the 5th of October of that year, so that the remedy was cut off. It is not necessary to consider any of the other questions that would be raised upon the record.

It follows that there was error in overruling the demurrer of the defendants.

Decree reversed, and judgment here sustaining the demurrer and dismissing the bill.