## Scott v. The First National Bank of Kokomo.

### No. 7060.

PROMISSORY NOTE.--*Non-Payment at Maturity.*—*Loss of Mercantile Character.*—*Rights of Assignee after Maturity*—A negotiable promissory note does not lose its mercantile character on being dishonored by non-payment at maturity, but retains its commercial attributes and circulates as such. And an assignee thereof, after maturity, acquires nothing but the actual right and title of the assignor.

SAME.—*Indorsement.*—An indorsement, before maturity, of such note, is itself a negotiable contract, and the liability of one who indorses the paper after its maturity is the same in all essential respects as one who indorsed before the paper matured.

SAME—*Indorser.*—*Re-Indorsement.*—*Collateral Security.*—P. executed to S.

two negotiable promissory notes, each for $1,000, and secured them by mortgage. The notes waived presentment for payment, protest, and notice of protest and non-payment. S. sold and indorsed the notes before maturity to B., and received full and valuable consideration therefor. B. delivered the notes to L., to hold as collateral security against a liability incurred by L. for B.'s benefit; S., at request of L., furnished the money to pay off L.'s claim, and L. assigned the notes and mortgage back to S., to hold as security for the return of the money so paid to L.; S., B. and a bank agreed that the bank should pay to S. the sum due him on account of the money so paid to L., and that the bank should take the notes and give B , who was indebted to the bank, credit for the surplus realized out of the notes and mortgage over and above the sum paid to S.; and upon such condition S indorsed the notes, which were past due, to the bank, and received therefrom the sum paid out by him to L.

*Held,* that S.'s indorsement, made to B. before maturity, was not affected by the re-indorsement of the notes to him, and his second indorsement, made to the bank, under the arrangement made, carried with it the benefit of the indorsement to B. as of the date it was made, and B. had a right to have the indorsement remain for the full payment of the face of the notes to the bank, after deducting a sum equal to that paid by S. to L.

From the Howard Circuit Court.

*M. Bell, M. McDowell, N. B. Taylor, F. Rand* and *E. Taylor,* for appellant.

*N. R. Lindsay* and *T.A. De Land,* for appellee.

Woods, J.—The appellee sued the appellant, Scott, Sanford Prater and three others, to foreclose a mortgage, and to recover the sum due on two promissory notes, to secure the payment of which the mortgage was given.

It is averred in the complaint, in substance, that said Prater, on October 16th, 1874, made his two certain promissory notes, to become due respectively in one and two years from date, each for $1,000, negotiable and payable to said Scott or bearer, at Walker's Bank in Kokomo, Indiana, and, to secure the payment of the same, executed a mortgage on real estate described; that on or about the — day of ———, 187–, said Scott indorsed said notes to Harvey Brown, who transferred them by delivery to H. C. Lindley, who, on the 6th of September, 1875, indorsed the same without recourse to the said Scott, who, on De-

cember 8th, 1876, for a valuable consideration, indorsed the same to the plaintiff; and copies of the notes and mortgage and alleged indorsements are exhibited and made a part of this complaint. Each of the notes, as set out, contains a stipulation, that "the makers and indorsers jointly and severally waive presentment for payment, protest, and notice of protest and non-payment." Besides a foreclosure against all the defendants, there was rendered below a personal judgment against Prater and Scott for the sum of $2,487.64.

Scott alone appeals, and assigns for error that the complaint does not state facts sufficient to constitute a cause of action against him. In support of this assignment, it is contended that the indorsements of the notes by Scott to appellee were made after the notes were overdue, dishonored and "had ceased to be commercial paper," and that an averment of the insolvency of the maker, or that all remedy against him had been diligently exhausted, is necessary to make the complaint good as against the appellant.

It is a mistaken assumption of counsel for appellant, that negotiable paper loses its mercantile character by being dishonored for non-payment or non-acceptance. "The paper retains its commercial attributes, and circulates as such in the community; but there is this vital distinction between the rights of a transferee who received the paper before, and one who received it after maturity; the transferee of negotiable paper to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferrer." So the doctrine is stated in 1 Daniel on Negotiable Instruments, p. 579, supported by numerous adjudicated cases cited. See also Byles on Bills, 6th ed., pp. 262-267, and notes; Story on Prom. Notes, sec. 178, and notes.

The indorsement of a negotiable note or bill, whether

made before or after the maturity of the obligation, is itself therefore to be deemed a negotiable contract, and the liability of the indorser after maturity of the paper is the same, in all essential respects, as of one who indorses before the paper has matured.

In *Leavitt* v. *Putnam*, 3 N. Y. 494, HURLBURT, J., says : " There is unquestionably a difference between the endorsement of a note after due and one while it is running to maturity, but this relates only to a single point arising from the necessity of the case, to wit, the time of payment, which, in the latter indorsement, is fixed at a future day by the express agreement of the parties, while in the former, it is declared by law to be within a reasonable time, upon demand. But in all other respects the contract is the same as an indorsement in the usual course of trade ; and it is difficult to perceive how the single difference referred to can at all affect the negotiability of the indorsement. A bill or note does not lose its negotiable character by being dishonored. If originally negotiable it may still pass from hand to hand, *ad infinitum*, until paid by the drawer. Moreover, the indorser after maturity writes in the same form and is bound only upon the same condition of demand upon the drawer and notice of non-payment as any other indorser. Thus the paper preserves its mercantile existence, and retains the main attributes of a proper bill or note, and circulates as such in the commercial community."

Conceding then, but not deciding, that the indorsement, made by Scott to Brown before the notes became due, became inoperative upon the reassignment of the notes to Scott, and that appellee, on the averments of the complaint, can hold Scott liable only as upon an indorsement made December 6th, 1876, when the notes were past due, we hold that the indorsement so made is to be treated as an indorsement of commercial paper, made in the usual course of trade, and, presentment and notice of non-pay-

ment having in this case been expressly waived by both maker and indorsers, the complaint states a good cause of action against the appellant.

Scott filed an answer in four paragraphs to the complaint: First, a general denial; second, no consideration for his indorsement; and third and fourth, that there was no consideration for his indorsements of the notes except the sum of $1,238; the fourth differing from the third only in that the facts concerning the several transfers of the notes from Scott to Brown, and Brown to Lindley, and from Lindley back to Scott, and the indorsement by Scott to the appellee, are stated more minutely in the fourth answer. To the second, third and fourth answers there was a reply in general denial.

Appellant, at the proper time, filed a motion for a new trial, which was overruled, to which ruling the appellant duly excepted and has assigned error thereon.

The causes for a new trial stated in the motion are:

1st. That the finding and decision of the court are not sustained by sufficient evidence, and, 2d, are contrary to law;

3d. Error of the court, in holding that the indorsement of the defendant Scott, at the time of receiving at the bank $1,238, his interest in the notes, made him liable to the bank for the full face of the notes;

4th. Error of the court in the assessment of the amount of recovery, the same being too large.

In order to determine the question or questions thus raised, it is necessary to make a statement of the main features and scope of the evidence in the case.

The notes and indorsements and mortgage, corresponding with the copies filed with the complaint, were put in evidence. It was shown, or at least there was evidence tending to prove, that Scott sold and indorsed the notes before they were due to Brown, and received a full and

valuable consideration therefor; that Brown delivered the notes to Lindley, to hold as collateral to secure him against a certain liability which he, Lindley, had incurred for Brown's benefit, and that Scott, at the request of Lindley, furnished the money to pay the sum necessary to discharge that liability, and Lindley assigned the notes and mortgage to Scott, to hold as security for the return to him of the money so advanced; and the notes being so held by Scott as collateral only, it was arranged and agreed between Scott and Brown and the appellee, that the appellee should return to Scott the sum due him on account of the money so advanced, and the bank should take the notes and give Brown, who was indebted to the bank, credit for the surplus realized out of the notes and mortgage over and above the said sum paid to Scott, and upon that consideration Scott, on December 6th, 1876, indorsed the notes to the bank, the appellee, and received therefrom said sum and no more, to wit, $1,258.

There is conflict in the evidence concerning some of these facts, especially as to whether Scott made any indorsement of the notes to Brown, or only an assignment by delivery; but there is in the record enough evidence of such indorsement to sustain a verdict against disturbance by this court, and if the facts above stated are sufficient to sustain the decision of the circuit court against the objections made, the judgment of the court below must be affirmed.

Whatever the conclusion should be on the facts stated in the complaint, where it does not appear that Scott held the notes as collateral only, with that fact added, we think it quite clear that Scott's indorsement, made to Brown before the notes were due, was not affected by the re-indorsement of the notes to him, and that his, Scott's, second indorsement of the notes, made to the bank on the arrangement and consideration stated, carried to the bank the

benefit of the indorsement made to Brown, as of the date when it was made, and Brown had a right to have the indorsement remain an unimpaired guaranty for the full payment of the notes, the proceeds of which, according to the agreement made, after deducting the $1,258 repaid to Scott, were to be applied in the extinguishment of his debt to the bank.

The judgment below is affirmed, with costs.