No. 9014.

CARITHERS ET AL. *v.* STUART.

MORTGAGE.—*Married Woman.—Assignor and Assignee.—Priority of Lien.*— Where a wife joins in a mortgage of her husband's lands to secure his notes, and by his death she and his children take the land by descent, and she purchases and becomes assignee of some of the notes first maturing, she may foreclose and obtain priority over those holding the other notes maturing later.

Carithers *et al. v.* Stuart.

SAME.—*Subrogation.*—*Priority.*—A widow who had joined her husband in a mortgage of his lands to secure several notes due at different times, by paying off an early instalment, will be subrogated to the mortgage security, but, as against the mortgage creditor or his assignee of the notes maturing later, will be postponed.

BILL OF EXCEPTIONS.—*New Trial.*—*Arrest of Judgment.*—Where motions for a new trial and in arrest of judgment by the same party were successively made and overruled on the same day, following which time was given beyond the term for a bill of exceptions, which was properly in the record, an objection in the Supreme Court that, because the motion in arrest was made before leave to file the bill was given, no question could, in view of section 343, code of 1852, be made upon overruling the motion for a new trial, is not valid.

PRINCIPAL AND AGENT.—*Notice.*—*Evidence.*—*Instruction.*—Notice to an agent transacting the business binds the principal, and, where there is evidence tending to show such notice to the agent, an instruction that actual notice to the principal is necessary, is erroneous.

From the Jefferson Circuit Court.

*E. R. Wilson, T. B. Adams* and *L. T. Michener*, for appellants.

*C. A. Korbly*, for appellee.

BLACK, C.—The complaint in this case showed, in substance, the following facts: On the 31st of August, 1872, John R. Stuart executed to Moses Carithers five promissory notes, one for $500, and each of the others for $1,000, due respectively in one, two, three, four and five years after date; at the same time said John R. Stuart and his wife, Martha B. Stuart, who is the appellee, to secure said notes, executed to said Carithers a mortgage on certain real estate owned by said John R. Stuart in Jefferson county; on the 5th of August, 1874, said John R. Stuart, still owning the equity of redemption, died intestate, leaving the appellee, his widow, and five children, his heirs at law; afterward said Carithers, for value, assigned two of said notes, due respectively in two years and five years from their date, to Helen M. Carmany, who, retaining the five-year note, assigned the two-year note to the appellee, for value; and said Carithers, for value, assigned the three-year note to the appellee; the four-year note was en-

dorsed by said Carithers to the Madison Insurance Company as collateral security for a debt of said Carithers to said company; said two notes assigned to the appellee were due and unpaid when this action was brought by the appellee against said Carithers, Carmany, the Madison Insurance Company and said children of said decedent to foreclose said mortgage, the appellee claiming priority.

Said Carithers demurred to the complaint, and the demurrer was overruled. The Madison Insurance Company and Mrs. Carmany separately filed answers and cross complaints. Issues were formed, which were tried by a jury, whose verdict was in favor of the appellee, and that she and Mrs. Carmany and said insurance company were each entitled to foreclosure for amounts found due them respectively on said notes; and the jury found in favor of Mrs Carmany against Carithers for the amount of the fifth note.

A motion for a new trial made by the defendants Carithers and Carmany was overruled. Judgment was rendered in accordance with the verdict, giving priority in the distribution of the proceeds of the mortgaged property in the order of the dates of maturity of the notes.

This appeal was brought by the defendant Carithers, who gave notice thereof to his co-defendants, all of whom have declined to join.

Counsel have discussed the action of the court in overruling the appellants' demurrer to the complaint, and in overruling the motion for a new trial.

Where a woman has joined with her husband in a mortgage of his real estate, to secure his promissory notes, and by the death of the husband the equity of redemption has passed to her and his children, as his widow and heirs, and she has purchased and taken assignments of some of the notes maturing sooner than the others, may she maintain an action for the foreclosure of the mortgage and obtain the satisfaction of the notes so assigned to her out of the proceeds of the mortgaged property before the application thereof to the payment of the

Carithers *et al. v.* Stuart.

notes of later maturity still held by the mortgagee, or in the hands of other assignees?

It is claimed on behalf of the appellant, that because the appellee joined in the mortgage, and held an interest in the land subject thereto, her purchase of two of the notes should be regarded merely as a payment and extinguishment of the portion of the mortgage debt evidenced thereby, and that she could not have the right of subrogation without payment of the whole debt secured by the mortgage.

By uniting in the execution of the mortgage, the wife, not becoming personally bound, released her inchoate interest in the real estate as to the mortgagee and his assignees, without impairing her right to share in the equity of redemption. On the death of her husband she became a tenant in common with the children, subject to the mortgage, without any personal obligation resting upon her either as principal or surety.

We think that by agreement between her and the mortgagee, or his assignees, all or any number of the notes, with their mortgage security, might be transferred to her, so that she and the holders of the other notes should stand to each other as successive mortgagees; and that such a conventional transfer was made the complaint averred, by alleging her purchase of the notes and the assignment thereof to her by the holders. She seeks by her complaint the subjection of the mortgaged property to the payment of the mortgage debt, and that she may share in the proceeds as the mortgagee and his assignee, for a valuable consideration, amounting to the share asked by her, agreed to permit her to participate.

The complaint stated facts sufficient, not merely as against the appellee's co-tenants, but also as against the mortgagee and his assignees.

It is claimed by the appellee that no question presented by the motion for a new trial is properly saved for the consideration of this court. No bill of exceptions was taken during the trial or during the term at which the trial was had, but at that term a motion for a new trial made by the defendants

Carithers and Carmany was overruled, and the record shows that afterward, on the same day, the same defendants moved to arrest the judgment, that the motion in arrest was on that day overruled, and that time extending beyond the term was then given to file a bill of exceptions. A bill was filed within the time so allowed.

It is insisted by appellee's counsel that no questions arising on the motion for a new trial could be saved by such bill, because the motion in arrest intervened between the overruling of the motion for a new trial and the granting of leave to file the bill. This objection can not be allowed. The members of the profession have not understood section 343 of the code of 1852 as requiring such strictness, and we know of no instance in which it has been so closely construed by this court. Leave taken at the term at which the trial was had, and at which the motion for a new trial was overruled, was sufficient. *Pitzer* v. *Indianapolis, etc., R. W. Co.*, 80 Ind. 569.

It was assigned as a cause in the motion for a new trial, that the court erred in giving the fifth instruction to the jury. The motion also stated as causes that the verdict was not sustained by sufficient evidence, and that it was contrary to law. The evidence showed that the note for $500 had been paid by John R. Stuart. As to the three-year note, there was some evidence tending to prove the allegation that it was sold and assigned to Mrs. Stuart by the appellant. The evidence sustained the averments of the complaint as to the fourth and fifth notes. The two-year note had been sold by the appellant before its maturity, to Mrs. Carmany, through her agent, one Morehouse, to whom it was delivered by the appellant, with his name endorsed thereon. Before its maturity Mrs. Carmany, through her said agent, endorsed her name thereon after that of the appellant, and delivered the note for collection only to the National Branch Bank of Madison, in which it was made payable.

There was some evidence of which it may, perhaps, be said that it tended to prove that a transaction by which this note

Carithers *et al. v.* Stuart.

was transferred from the bank to Mrs. Stuart was at the time intended by her, not as a payment and extinguishment of the note, but as an assignment of the title thereto with the mortgage security. The jury found, in answer to interrogatories, that Mrs. Stuart purchased this note from the bank. All the business relating to the note between the bank and Mrs. Stuart was done on her behalf by one Fry. The note had matured in the bank, and had been protested for the bank, as holder, for non-payment. Mrs. Stuart knew that the note was due, and was informed after its maturity and a short time before she received it from the bank, that this note and another one were owned by Mrs. Carmany. She had no knowledge of the endorsements on the note. Said Fry, on Mrs. Stuart's instruction, at her home, wrote a check on said bank, in which she had funds. The check was made payable to " Mr. Morehouse note or bearer," and was signed by Mrs. Stuart and given by her to Fry to pay on the note. Fry took the check to the bank and there presented it to the teller, with a notice from the bank of the note's maturity, which had come into Fry's hands. The teller took the check, found the note in a pocket-book in which the bank kept protested papers, and, having entered the amount of the note to the credit of Mrs. Carmany in the bank, and charged the bank account of Mrs. Stuart with the same amount, handed the note and protest paper to Fry. Mrs. Stuart gave Fry no particular directions about this note; his instructions were to go and pay it. She stated to him that the note was in Mr. Morehouse's hands, or was Morehouse's note, or his note in bank, and that was the reason why he filled up the check as he did.

The teller testified that he was of the impression, but was not at all certain, that Fry requested that the note be not stamped as paid. Some time before this transaction, in a conversation between Fry and the person who was the teller at the bank, Fry requested him to become administrator of the estate of John R. Stuart, deceased, and told him about these notes and where they were, and stated that he had advised

Mrs. Stuart to secure or to buy all these notes and get a home for herself and the children. This conversation did not relate to any particular note. At the time Fry got the note from the bank there was no reference to any previous conversation, and nothing was said about buying the note. The teller knew the note belonged to Mrs. Carmany, and had no instruction from her, the bank officers, Morehouse, or any one, to sell it. Fry testified on behalf of the appellee that he was satisfied at the time he got the note from the bank that Mrs. Carmany owned the note, and that Morehouse was her agent; that Morehouse was at a store across the street from the bank, but he, Fry, did not go to see him, and did not see or speak to him about the note. He never said anything to Mrs. Carmany about the note, though she lived about one square from his house, and three squares from the bank. He said nothing to any one about it but Mrs. Stuart, who testified that she did not go to see Mrs. Carmany or Mr. Morehouse. The teller testified that he thought Fry said, when he handed him the check, that he wanted to take up one of the notes of Stuart, held by Mrs. Carmany, and Fry testified that he did not think that he exchanged five words with the teller.

The fifth instruction mentioned above was as follows: "The mere fact that the two-year note was past due and had been protested for non-payment was not, of itself, sufficient to charge the plaintiff with notice that the bank had no authority to sell the note. The plaintiff must have had actual knowledge at or before the time her money was paid at the bank that Mrs. Carmany owned the note, and that it was left at the bank for collection only, in order to affect the plaintiff and bind her thereby; and if plaintiff did not have such actual knowledge that Mrs. Carmany owned the note, at or before the time her money was so paid, plaintiff would have a right to presume that the bank held the note for value and had a right to sell it."

The general rule is that one in possession of personal property other than negotiable paper can confer no better or other

title than that which he himself has.  This rule applies to non-negotiable notes and their securities.

Mrs. Stuart obtained the note from the bank after its maturity.  It was a negotiable promissory note which had been dishonored, and the fact of its dishonor was equivalent to notice to one purchasing it that he took only such title as the transferrer had.  Dan. Neg. Inst., section 782; *Scott* v. *First National Bank,* 71 Ind. 445.

A person who purchases a non-negotiable chose in action for value and in good faith takes it subject not only to defences of the original debtor who issued it, but also to what have sometimes been called latent equities in favor of the assignor of the person from whom such purchaser acquires it; indeed, this is implied in the statement that the purchaser takes only such title as his transferrer has.  *Bush* v. *Lathrop,* 22 N. Y. 535; Pomeroy Eq. Jur., section 709.

The rule, however, is subject to modification in a particular case by the application of the principle of estoppel.  In *McNeil* v. *Tenth National Bank,* 46 N. Y. 325 (7 Am. R. 341), the doctrine of estoppel was applied to a transfer of a certificate of shares in a stock corporation, and it was held that if the owner of such a chose in action voluntarily deliver it to another for a special purpose, with apparent indicia of absolute ownership and unconditional power of disposition over the security, and the person to whom it is so delivered, contrary to the owner's intention, wrongfully transfer the certificate to an innocent purchaser for value in the regular course of business, such original owner is estopped from asserting his title and the want of title of his immediate assignee, as against such purchaser.

In *Moore* v. *Metropolitan Nat'l Bank,* 55 N. Y. 41 (14 Am. R. 173), the principle of estoppel was applied to a transfer of a certificate of indebtedness, and was made applicable upon slighter grounds than those on which it was enforced in *McNeil* v. *Tenth National Bank, supra.*  The doctrine of the last named case has been approved in later cases in the same court and in other States, and has been applied to transfers of

other kinds of things in action. It is not necessary here to discuss the subject at length. For the present state and tendency of the law on the subject, see Pom. Eq. Jur., sections 707–711, and authorities there cited; *International Bank* v. *German Bank,* 71 Mo. 183; S. C., 36 Am. R. 468.

Whatever the form of the chose in action, it would seem that, to constitute the estoppel, the immediate assignee of the true owner should be clothed with the apparent rights of ownership which are recognized by business men in their usual course of dealing with like securities, as sufficient to confer a complete title and power of disposition upon such assignee; and, of course, the party who may avail himself of the estoppel as against the true owner must be a purchaser for value and without notice. Pom. Rem., section 160.

There was no actual transfer of title to the note in question from Mrs. Carmany to the bank; nor was it placed in the possession of the bank for the purpose of a transfer of title to any person; and if she has any equity for the protection of which it is necessary to treat the note as paid and extinguished, it should be so treated, unless she is estopped to deny that the title passed to Mrs. Stuart.

There it no occasion here for the application of the principle of estoppel. The note was endorsed to the bank for a special purpose, and on the part of the bank there was no violation of instructions or failure to carry out that purpose; there was not, in fact, any conventional assignment of the note by the bank to Mrs. Stuart. If it was her intention to buy the note, it was not the intention of the bank to sell it; but the bank, recognizing Mrs. Carmany as the owner of the note, intended to collect the money due upon it for the owner, and did so, while no purpose on the part of Mrs. Stuart to treat the transaction as a sale was communicated to the bank; besides, Mrs. Stuart was chargeable with such notice as would defeat an estoppel. The designation in a note of a bank as a place of payment imports a stipulation that the holder will

have the paper at the bank at maturity to surrender up, and that the maker will there pay it. Dan. Neg. Inst., section 325.

The agent Fry was satisfied that Mrs. Carmany owned the note, and he found it overdue at the bank at which it was made payable and from which he had received a formal notice of its maturity. He was chargeable with notice that the note was there for collection only. Notice to the agent was notice to the principal. Of this the instruction above set out failed to inform the jury.

There was evidence tending to prove that Mrs. Stuart had actual notice; and it was not necessary, for Mrs. Carmany's protection, that Mrs. Stuart should have " actual knowledge." To place herself in a situation to claim an estoppel, she must have become a purchaser without legal notice. See Pom. Eq. Jur., section 592, *et seq.*

As Mrs. Stuart can not be regarded as a conventional assignee of the two-year note, what are her rights as to the appellant growing out of payment of that note?

A tenant in common who has paid off a mortgage on the whole property, which he was not personally bound to pay, is entitled to be subrogated to the mortgage security. Jones Mortg., secs. 874, 1063, 1067, 1086; Pom. Eq. Jur., secs. 798, 799. It is a well settled general rule that before subrogation can be enforced the whole debt must be paid. Substitution can not be made as long as the debt of the party whose rights are claimed be used for the purpose of protecting the interest of the applicant for substitution remains unsatisfied, though it be in part only; " for until he shall be wholly satisfied, there ought and can be no interference with his rights or his securities, which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim." *Kyner* v. *Kyner*, 6 Watts, 221. See, also, *Receivers, etc.,* v. *Wortendyke*, 27 N. J. Eq. 658; *Bank of Pennsylvania* v. *Potius*, 10 Watts, 148; *Swan* v. *Patterson*, 7 Md. 164; *Magee* v. *Leggett*, 48 Miss. 139. In *Farebrother* v. *Wode-*

*house,* 23 Beav. 18, it was held that where two properties are mortgaged by A. to B., for distinct sums, and C. is surety for one only, the right of B. to retain all the securities until repaid both debts, overrides the right of C. to have the benefit of the securities for that debt for which he is surety. In *Zook* v. *Clemmer,* 44 Ind. 15, Terhune gave Kiphart three notes payable in one, two and four years, for purchase-money of land, and a mortgage on the land to secure them. Kiphart assigned the first note to Norman, and the second to the Deitches; Norman obtained a judgment on the first note against Terhune without foreclosing the mortgage; Clemmer became replevin bail on this judgment, and as such was compelled to pay the judgment. The Deitches foreclosed the mortgage on the second note, without making Norman a party, and, under the decree, the property was sold and conveyed to Fesler, who paid the third note and conveyed the property to Zook. Terhune had no other property than the mortgaged premises. Clemmer, the replevin bail, sought to be subrogated to the rights of Norman, under the mortgage, and to foreclose the mortgage, asking priority over Zook. It was held that Clemmer, the surety, having paid only a portion of the mortgage debt, was not entitled to subrogation. The rule that a surety who has paid the debt of his principal has a right to claim the benefit of any securities for the debt in the hands of the creditor was recognized, but it was said : " The several notes secured by the mortgage in this case must, we think, be regarded as but one debt with reference to the rule in question." In an elaborate dissenting opinion, BUSKIRK, J., agreeing that the rule would apply in a case where all the notes were held by the mortgagee and he had obtained a judgment at law on the first one, and a replevin bail had been compelled to pay that judgment, argued that it was not applicable to the case then before the court, the notes being in the hands of different assignees. He based his objection upon the rule long established in this State, that a mortgage given to secure the payment of several notes, payable at different times, is

considered, for the purpose of adjusting the rights of the several holders of the notes, where any of them have been transferred, as so many different mortgages, and that the holders of the several notes will have priority, or be postponed, in the order of the dates of maturity of the notes. *Zook* v. *Clemmer*, *supra*, has been cited as authority in *Vert* v. *Voss*, 74 Ind. 565, *Rice* v. *Morris*, 82 Ind. 204, and *Rooker* v. *Benson*, 83 Ind. 250. A surety who pays one of several notes, secured also by mortgage, is subrogated to an interest in the mortgage security, but the right as to priority which, by the rule above referred to, exists in this State as between an assignee of one of such notes and his assignor or the assignees of the other notes, does not pass to the surety so subrogated.

In Virginia, where several notes are secured by a mortgage or by a vendor's lien resulting from the retention of the legal title, and any of the notes have been assigned, the priority of the parties is made to depend, not upon the maturity of the notes, but upon the date of assignment. *McClintic* v. *Wise's Adm'rs*, 25 Grat. 448. In *Grubbs* v. *Wysors*, 32 Grat. 127, Grubbs sold land to Wysor, Jr., the purchase-money to be paid in three instalments, Grubbs retaining the land until the whole was paid. For the first instalment Wysor, Jr., executed a negotiable note, with Wysor, Sr., as surety, payable at one year; and for the other instalments Wysor, Jr., gave his own notes, at two and three years. Grubbs assigned the note for the first instalment to M., who assigned it to H. After its maturity and protest, it was paid by Wysor, Sr. It was held that while the assignment carried to the assignee so much of the lien as was necessary to secure the note assigned, and, as between Grubbs and the assignee, gave the latter a prior lien, these equities of the parties among themselves were not available to the surety by subrogation in such a case, where the rights of Grubbs, the creditor, would be thereby impaired, and that, therefore, the lien of the surety must be postponed to that of the creditor.

The interest of Mrs. Stuart in the mortgaged real estate

was a security for each and all of the mortgage notes. This interest gave her a right as against her co-tenants to subrogation. But, as against the creditor, and with reference to the rule that one seeking subrogation must pay the whole debt, the mortgage instalments constituted one debt. As holder of the fourth note the Madison Insurance Company was postponed to Mrs. Stuart as holder of the second and third notes. The appellant would be entitled to any surplus that the insurance company might realize out of the proceeds of the mortgaged property above the amount necessary to discharge the debt as collateral security for which it held said fourth note, and he would be bound to the company for any balance of that debt not realized out of said proceeds.

A personal judgment was rendered in favor of Mrs. Carmany against Carithers on his endorsement of the fifth note, and she also was postponed, in the distribution of the proceeds of the mortgaged property, to Mrs. Stuart, as holder of the second and third notes.

The insurance company and Mrs. Carmany, relying on the financial ability of Carithers, might be indifferent upon the question of priority. The appellant was interested in that question. Equity will not, by way of enforcement of the right of subrogation, prejudice the creditor. The appellant, having rights and obligations as the original mortgage creditor, might object to the giving of priority to Mrs. Stuart, to his prejudice, because of her payment of a portion of the mortgage debt.

Other questions presented by the motion for a new trial may not arise upon another trial.

The judgment should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be reversed, at the costs of the appellee, and the cause is remanded for a new trial.