Horn *v.* Bennett *et al.*

Filed Sept. 29, 1893.

---

No. 16,273.

## HORN *v.* BENNETT ET AL.

MORTGAGE.— *Given to Secure a Series of Notes.—Assignment of Notes.— Assignees' Interest in Mortgage.—Priority of Lien.*—Where a mortgage is given to secure a series of notes of even date, maturing at different times, and the mortgage contains a provision that upon the failure to pay any one of said notes at maturity, then all of said notes shall become due and payable, and the mortgage may be foreclosed; and all of the notes so secured are assigned to different parties before maturity of any of them, the assignees of the notes take a *pro tanto* interest in the mortgage security, with priority according to the dates at which their notes mature, as stated in the notes, and this rule of priority is not changed by the default, by the mortgagor and maker, on failure to pay either the principal or interest of any note at maturity, by which default all the notes mature.

Opinion on petition for a rehearing by DAILEY, J.

Horn *v.* Bennett *et al.*

From the Fulton Circuit Court.

*I. Conner* and *J. W. Rickel*, for appellant.

*F. H. Terry,* — *Johnson, J. S. Slick, E. Myers* and *W. McMahan*, for appellees.

OLDS, C. J.—This is a suit for the foreclosure of a mortgage, instituted by the appellee Charles O. Bennett against the appellant, Mary E. Horn, and Enoch Myers and his wife, Mahala, and William W. McMahan and his wife, Julia F., to foreclose a mortgage on lands therein described, and situate in the county of Fulton, in the State of Indiana, to secure the payment of a series of seven notes, each dated December 2, 1889. The first one of which notes, by its terms, became due on or before December 2, 1890, and each of the others, by its terms, on or before the 2d day of December thereafter, annually, until all should mature. The mortgage securing the notes contained the following stipulation: "It is agreed and understood by the parties hereto, upon the failure to pay any one of said notes at maturity, then all of said notes shall become due and payable, and this mortgage may be foreclosed."

Each of said notes had been assigned before this action was commenced, by indorsement, on the back thereof; the first five to the appellee Bennett, and the two last to the appellant, who was made a defendant in the complaint of said appellee Bennett to foreclose the mortgage, and she filed her cross-complaint to foreclose said mortgage as to the two notes which she owned.

Issues were joined and trial had, and a decree of foreclosure entered, giving to the appellee Bennett priority as to the notes held by him, and that the proceeds arising from the sale be first applied to the payment of the sum found due on the notes owned by said Bennett, and the surplus, if any, to be applied in payment of the sum

found due on the notes owned by the appellant. Appellant moved the court to modify the judgment and decree so as to place the sums due each on an equality, and allow them to share *pro rata* in the fund derived from the sale, which motion was, by the court, overruled, and exception reserved, and this ruling is assigned as error. The same question is presented by a motion for new trial, the court finding, as a fact, that appellee Bennett had a prior lien for the sum found due him on the first five notes, and the appellant had a subsequent or junior lien for the sum found due her on the two notes owned by her, being the sixth and seventh notes, and the notes last due in the series of seven.

That under the stipulation in the mortgage, all the notes matured and became due on the failure of the payor to pay the note due first, and that there was a failure to pay the note first due, before the commencement of the suit, maturing all of the notes due before suit was commenced, is not doubted or questioned by either the appellant or appellees. That the notes did all mature upon failure to pay the first, has been settled by this court. *Moore* v. *Sargent*, 112 Ind. 484.

It is also the settled law of this State that where a series of notes, falling due at various dates, are secured by mortgage, without any condition in the mortgage, such as is in the one in the suit at bar, whereby they mature earlier than the date fixed in the note, on failure to pay any one when it matures, in case of an assignment of the notes to **various** persons, they will be treated as several mortgages, and the persons holding the notes maturing first will have a prior lien to those holding the notes maturing subsequently thereto. This has been the rule in this State since the decision in the case of *State Bank* v. *Tweedy*, 8 Blackf. 447, and has been uniformly so held whenever the question has been pre-

sented. *Doss* v. *Ditmars*, 70 Ind. 451; *Gerber* v. *Sharp*, 72 Ind. 553, and authorities cited in this opinion. Many other authorities might be cited.

In this case, it is contended by counsel for the appellant, that the notes must be treated as all maturing at the same time, and the assignment transferred but a *pro rata* interest in the mortgage security, and that this question is an open and new one in this State, never having been passed upon by this court. While, on the other hand, counsel for appellee contend that the condition in the mortgage, upon which all of the notes should mature on failure to pay the note first due, in no way changed the rights of the parties; that they are the same as if they matured in the order and at the time named in the notes, and that the decisions in the *People's Savings Bank* v. *Finney*, 63 Ind. 460, and *Doss* v. *Ditmars*, *supra*, are decisive of the question in appellee's favor.

In the latter case, there was a condition in the mortgage similar to the one in this case, but it was not considered or discussed or treated as having any bearing upon the case, and in the case of the *People's Savings Bank* v. *Finney*, *supra*, the assignee of the first note extended the time of payment until after the subsequent notes matured, and the holders of the junior notes sought to postpone the lien of the holder of the senior note and have it decreed to be a junior lien on account of the extension of time of payment, and it was held that this could not be done; that the priority of liens was not affected by the extension of the payment.

The question presented in this case does not seem to have been considered and decided by this court, although the two decisions last referred to tend to support the contention of the appellee. The decisions of other States,

where the question has been passed upon, are in conflict, some holding that the assignees take *pro rata* and some that they take *pro tanto*, but it may be remarked that there is a like difference in the holdings of the courts of other States when the notes held by assignees mature at different dates.

In *Parkhurst* v. *Watertown Steam Engine Co.*, 107 Ind. 594, the law of this State is stated to be "that an indorsee of a part of such notes so secured by mortgage, is entitled in equity to payment out of the mortgage funds, in preference to the notes retained by the mortgagee and assignor, although the notes so assigned may fall due subsequently to those retained by the mortgagee."

This modifies, to some extent, the rule as held in *State Bank* v. *Tweedy, supra.*

It is also intimated or suggested, rather, in the case of *Parkhurst* v. *Watertown Steam Engine Co., supra,* that a difference in the rule as to priority might exist between the assignees of notes assigned at different dates and the assignees of notes assigned at the same date.

It is a well settled rule in equity that where the owner of real estate incumbered conveys a part to one purchaser, for value, and afterwards conveys to another purchaser the remainder, equity will compel the creditor to resort to the real estate last conveyed, and in case it is sufficient to pay the debt, the tract first sold will be freed from the lien, thereby giving the first purchaser the priority, or advantage.

When the notes and mortgage in suit were executed and assigned, the presumption existed that the notes would be paid at maturity. At the time the parties took the assignments, the notes were payable at different dates, the notes assigned to the appellee Bennett being payable at a prior date to those assigned to the appel-

lant.   As they stood at the date of the assignment, they were not collectible until the date named in each for their maturity.   Had the maker and mortgagor not made default in the payment, under the law of this State the appellee Bennett had the prior mortgage, securing the notes assigned to him.   We do not think the rights of the parties were changed by the subsequent default of the mortgagor in the payment of the first note.   Such default was not brought about by any act of the assignee of the notes first due, nor had he any control over the matter.

In considering this question, in the case of *Leavitt* v. *Goodwin*, 7 Lawyers' Rep., Annotated, p. 365, the Supreme Court of Iowa, says:   "In this State, and in Ohio, Indiana, Illinois, Alabama and some other States, the *pro tanto* or priority rule is followed, under which the notes first maturing are treated as prior, and to be first paid in full out of the security."

The appellant contended in favor of the *pro rata* rule, and the court further says:   "To apply the rule contended for by the appellant, in a State where the *pro tanto* rule is the established law, would add an element of uncertainty to mortgage securities that would seriously affect their value.   Such a rule would render it uncertain whether, under mortgages like this, the security would be applied *pro rata* or *pro tanto*.   Take a case of three notes and mortgage like those under notice, as an illustration. A party knowing that, under the laws of the State, the notes are entitled to priority according to the order of their maturity, and knowing the security to be sufficient for the first two notes, but insufficient for the whole, purchases and pays for the two notes first falling due on that basis.   If the maker may, by defaulting, deprive these notes of their priority, then surely they would not be purchased so readily, nor at such a price.   The rule con-

tended for would render it possible for the mortgagor and holder of the notes last falling due to defeat the holder of the first notes of his priority, by the makers failing to pay the interest on the last note, whereby all become due, and the holder of the last be entitled to a *pro rata* share of the security. Notes of this description, secured by mortgages and deeds of trust, enter largely into the business transactions of the State, and the courts should hesitate before pronouncing a rule that would render it uncertain whether security for such notes would be applied *pro rata* or *pro tanto*. Our conclusion is that the maturity of the notes, by reason of default in making prior payment, is not such a falling due as should change the rule for the application of the security.''

The court further says: ''One of the grounds upon which the *pro tanto* rule is supported is that making the notes mature at different times evidences an agreement that they are to have priority in the order in which they fall due. Hence, cases of default like this are not such a falling due as expunges from the contract the agreement as to priority.''

We think this statement of the Iowa Supreme Court enunciates the better rule, and is in harmony with the holdings of this court on the question of priority of liens, and assignees of notes take a *pro tanto* interest in the mortgage security, with priority according to the dates at which their notes mature as stated in the notes, and that this rule of their priority is not changed by the default in payment by the mortgagor and maker on the failure to pay either the principal or interest of any note at maturity, by which default all of the notes mature.

It follows, from the conclusion we have reached, that there is no error in the record.

Judgment affirmed.

Filed May 23, 1893.

### ON PETITION FOR A REHEARING.

DAILEY, J.—In the petition for a rehearing in this case, the appellant does not challenge or question the doctrine declared in *State Bank* v. *Tweedy*, 8 Blackf. 447, that a mortgage given to secure the payment of two or more notes, maturing at different times, must be considered as if there were as many successive mortgages as there are notes secured, and that the holder of the note first due has priorty, and each note has preference in the order of its maturity, but she urges that there is more than this involved in the controversy because the mortgage, securing the notes, contains this stipulation: "It is agreed and understood by the parties hereto upon the failure to pay any one of said notes at maturity then all of said notes shall become due and payable, and this mortgage may be foreclosed," takes the casê out of the operation of the rule, places it within the exception, and entitles the holders to participate ratably in the funds derived from the security, if there be not enough to pay all. Under this doctrine, the proceeds would be applied *pro rata* in part payment of the several notes, irrespective of the dates of maturity or assignment. Upon this question there are two lines of decision, the one declaring that there is a preference in the distribution of the proceeds, in favor of the holders of the pre-existing priorities, the other that the parties must share the proceeds *pro rata*. The latter position is not supported by an Indiana authority, and we can not adopt appellant's contention.

We think the policy of this State, as to the point involved, has been long since settled—that is, that the assignment of the note first maturing carries with it a *pro tanto* interest in the mortgage security. *Pro tanto*, and

not *pro rata.* For so much, in other words, and not in proportion.

When the notes, first maturing, were assigned to the appellee, Bennett, such act constituted a contract between him and the mortgagee Landis, which may be formulated in these words: "I herewith transfer to you so much of this mortgage as is sufficient to pay the five notes which I have sold you. If it require all, you shall have it; but if not, then what remains shall be applied to the other notes secured thereby."

Such an assignment is not a transfer of the undivided five-sevenths of the mortgage security. After such an assignment, what is left in the mortgagee to sell and transfer to the appellant is measured by what remains after deducting what he sold appellee, Bennett, from all he had originally. When he sold the remaining two notes to the appellant, the contract arising from the transfer may be thus stated: "I herewith assign to you whatever is left of this mortgage after the notes assigned to Bennett have been fully paid out of it."

If the *pro rata* rule obtained, this last would be a transfer of two-sevenths of the mortgage security. The rule in this State is not affected by a previous transfer of the notes last due. When Landis had completed the last assignment, and appellee Bennett became the owner of the first five notes of the series, and the appellant of the last two of the notes so secured, the rights of the assignees were fixed and vested as between themselves, and the parties are presumed to have contracted with a knowledge of the law governing such transactions. Bennett, then, had a right, as against appellant, to use just as much of the mortgage security as might be required to pay his notes in full. This correctly defines the rights of the parties during the whole of the period between the completed assignment of the notes and the maker's de-

Horn v. Bennett et al.

fault in paying the note first due.   We do not think the maker's default could change the rights of the assignees as between themselves and divest the right of Bennett to priority of payment out of the property pledged.   The legal presumption is that contracts will be performed, not violated.   Bennett will be presumed to have purchased  his notes and paid more for them than he otherwise would have done, because of the  priority which he would obtain.   The appellant may be  presumed to have purchased her notes and paid less for them  on  account of that priority.   Under such presumptions, it would be inequitable to hold that the maker's default, over which Bennett had no control, destroyed the priority and placed all the notes on an equality, thus substituting *pro rata* for *pro tanto* rights.

The appellant's contention that, if the parties agree upon a contingency upon which a debt shall become due, then, when the event happens, the debt is due, is recognized law, but the rule can not be carried to the extent of defeating the vested rights of the parties.   The priority of payments is fixed and governed by the notes themselves, upon their face, and not by a  contingency.

This precise question is considered and determined in the case of *Leavitt* v. *Goodwin*, by the Supreme Court of Iowa.   It was decided February 5th, 1890, and will be found in Book 7 Lawyers' Rep. Annotated, page 365.

The same doctrine is adhered to in *Humphreys* v. *Morton*, 100 Ill. 592; *Koester* v. *Burke*, 81 Ill. 436.

The case of the *People's Savings Bank* v. *Finney*, 63 Ind. 460, settles the principle as stated by us, and *Doss* v. *Ditmars*, 70 Ind. 451, disposes of the case.

Appellant's suggestion that the evidence is insufficient to sustain the finding of the court was  presented by assignment of error and argument on the original  hearing.   The allegations of the complaint, with  respect to

the rights of the appellee Bennett, on the notes in suit, are: "That since the execution of the notes and mortgage described, said five notes, marked exhibits 'A,' 'B,' 'C,' 'D' and 'E' had been sold, transferred and indorsed to plaintiff, who is now the owner thereof."

The evidence offered and appearing in the record of the case is a blank indorsement on each of the notes, "B. F. Landis." Appellant insists that this was not only a failure of the evidence to sustain the finding of the court, but an absolute failure of proof upon a material issue in the case. There was no answer in general denial putting in issue the execution of the indorsements, and hence no issue tendered requiring Bennett to put the indorsements in evidence.

Petition for a rehearing overruled.

Filed Oct. 11, 1893.