ALDEN v. WHITE, ADMINISTRATOR, ET AL.

[No. 4,265. Filed February 26, 1903. Rehearing denied June 19, 1903. Transfer denied April 6, 1904.]

JUDGMENT.—*Assignment of Part.*—*Priority of Lien.*—*Mortgages.*—A plaintiff sold and assigned one-fifteenth of the judgment to each of twelve persons. Thereafter eight of the assignees assigned their interests to a third person, and four of the assignees reassigned their interests to the judgment plaintiff. *Held,* that the judgment plaintiff transferred the judgment lien to each of the assignees *pro tanto,* and not *pro rata,* and that as to each of the twelve-fifteenths of the judgment debt there is a priority of lien over the three-fifteenths retained originally by the judgment plaintiff, the four shares reassigned standing on an equality with the other eight assigned shares. *Held,* also, that the division would not be affected by the fact that the assignees incurred expenses in avoiding certain tax liens upon the land.

From Allen Circuit Court; *W. J. Vesey,* Special Judge.

Action by John W. White, administrator of the estate of James B. White, deceased, to revive a decree of fore-

closure recovered by John B. White against James R. Godfrey and wife. Carrie S. Alden appeared and filed a cross-complaint as assignee of a part of the judgment, and claimed priority. From an order denying her motion to modify the judgment so as to give her priority over the plaintiff, she appeals. *Reversed.*

*W. H. Shambaugh* and *S. R. Alden,* for appellant.

*W. G. Colerick, K. C. Larwill* and *Guy Colerick,* for appellees.

BLACK, P. J.—The appellant sought unsuccessfully the modification of the judgment in a suit commenced in 1890 by James. B. White to revive a certain judgment rendered in 1876. White, whose personal representative is one of the appellees, filed a complaint and a supplemental complaint, and the appellant filed a cross-complaint and a supplemental cross-complaint. The averments of all these pleadings were by the court found to be true, and the facts illustrating the contention of the parties, shown by those pleadings, were substantially as follows: In 1876 James B. White instituted in the court below a suit against James R. Godfrey and Archange Godfrey, his wife, on four promissory notes executed by James R. Godfrey to said White, and to foreclose four mortgages on certain land in Allen county, executed at various times by said Godfrey and wife to White, to secure the payment of the notes. October 25, 1876, judgment was rendered in that suit in favor of White against James R. Godfrey on the notes for $7,242.23, with costs, without relief from valuation and appraisement laws, and against both of the defendants therein ·for the foreclosure of the mortgages and the sale of the real estáte, or so much thereof as might be necessary to pay the judgment and costs and accruing costs, which judgment, duly rendered, is in full force and effect and remains due and wholly unpaid. February 3, 1882, White, the judgment plaintiff, sold and assigned to each one of twelve persons, not includ-

ing any parties to said action, one-fifteenth part of said judgment, being in all twelve-fifteenths of the judgment, all of which assignments were duly made and entered in the order-book of said court, at the place therein where the judgment was entered.     The remaining three-fifteenths part of the judgment was retained by the judgment plaintiff and was still held by him at the rendition of judgment in the case at bar.     At and before the execution of the mortgages, and at the time of the rendition of the judgment in 1876, Archange Godfrey was the owner of the mortgaged real estate, and she continued to be such until her death. She died intestate in 1885, leaving surviving her as her only heirs at law, to whom said real estate descended, said James R. Godfrey, her husband, and a number of children and grandchildren of said James R. and Archange Godfrey. Letters of administration never were issued on the estate of Archange Godfrey.  July 21, 1894, James R. Godfrey died intestate, leaving surviving as his only heirs at law the other persons who were heirs at law of Archange Godfrey, deceased.     The estate of James R. Godfrey, deceased, is insolvent.     Eight of the twelve persons, to each of whom said White had assigned one-fifteenth part of the judgment and mortgage lien, severally sold, transferred, and assigned to the appellant, Carrie S. Alden, their several interests in the judgment so assigned to them by White, being in all eight-fifteenths thereof; and thereafter the other four of said twelve persons assigned their interests in the judgment—being four-fifteenths thereof—to James B. White, the judgment plaintiff.     The appellant continued to be the owner of the eight-fifteenths of the judgment, and the judgment plaintiff continued to be the owner of the seven-fifteenths thereof, at the time of judgment in the case at bar.

The twelve persons to whom the judgment plaintiff so assigned twelve-fifteenths of the judgment were descendants of John B. Richardville, who in his lifetime was

principal chief of the Miami tribe of Indians; and they, as members of that tribe, by virtue of treaties with the United States, were each entitled to the sum of $695.75, payable in January, 1882, when they were all minors. White, the judgment plaintiff, procured the father of two of these minors, and the mother of the other ten of them, to be appointed guardians of the minors, to receive the money so due them; and he took from said guardians the money so received for the minors, amounting to $695.75 for each of them, and in consideration thereof assigned of record one-fifteenth of said judgment and decree to each of said minors. Execution on the judgment and decree was stayed by agreement of record between said White and James R. and Archange Godfrey till 1882. The assignments of the interests of eight of these twelve persons to the appellant were made after the commencement of this suit to revive the judgment, and the assignments of the interests of the other four of those persons were made to White afterward, also pending this suit. In the repurchase of the one-fifteenth interest of each of said four persons by the judgment plaintiff he paid $500 for each of such interests to their guardian. The assignees of White, for the protection of the judgment and mortgage liens which had been assigned to them, procured the avoidance of certain alleged tax liens on the land, at great expense, to which White did not contribute.

The court adjudged that the decree of foreclosure and order of sale in favor of White against James R. and Archange Godfrey, with the lien of the mortgage on which the decree was based, be revived, and that execution issue thereon for the amount of said former judgment and decree with interest thereon from the rendition thereof, for the use of White, the judgment plaintiff, and the appellant; also that the clerk issue to the sheriff a certified copy of said decree and of this decree, and that the lands in question, or so much thereof as may be necessary to pay the de-

cree and costs, and the right, title, and interest of the defendants herein, of whom there were a great number, be sold thereon by the sheriff, etc.; also, that the proceeds of the sale be applied, first, in payment of the costs, etc.; second, in the payment to the appellant and the plaintiff of the amount of the former judgment and decree with interest, as follows: eight-fifteenths thereof to the appellant, and seven-fifteenths thereof to the plaintiff, and the remainder, if any, into court, to abide the order thereof; "and that should such proceeds be insufficient to pay the full amount of said former decree and interest, after the payment of costs as directed, the same to be prorated to plaintiff and Carrie S. Alden in proportion to their said interests therein."

The appellant moved to modify this judgment and order of distribution, in each of the following respects: (1) To strike out the provision for prorating the proceeds between the plaintiff and the appellant, if insufficient, after payment of costs, to pay the entire mortgage lien and decree revived, which provision was recited in the motion; (2) to adjudge priority of right to the surplus proceeds of sale, after payment of costs, in favor of the appellant at least as against the three-fifteenths of the mortgage lien and decree never sold and assigned by the plaintiff, and to order and direct the prorating of such surplus, in case of insufficiency thereof to pay the entire decree, to the appellant and the plaintiff in the proportion of eight to the appellant and four to the plaintiff until twelve-fifteenths of the entire decree and interest be paid, and providing for payment of the remaining three-fifteenths of the decree from the remainder of such surplus; also that the court adjudge priority of right in the appellant to the surplus proceeds of the sale herein, after payment of costs, to the extent of eight-fifteenths of the mortgage lien and decree revived, and direct the payment of her said interest before payment of the seven-fifteenths to the plaintiff. This motion was over-

ruled, and the action of the court in overruling it has been reserved for review.

It is a long-settled doctrine in this State that a mortgage of real estate is only a lien on the land as a security for the debt, the legal title remaining in the mortgagor subject to the lien of the mortgage. A mortgage purporting to be given to secure the payment of a note, secures the debt of which the note is evidence; and no change in the form of the evidence of the indebtedness or in the mode or time of payment thereof will discharge the mortgage. *Bodkin* v. *Merit,* 86 Ind. 560; *Simmons Hardware Co.* v. *Thomas,* 147 Ind. 313; *Bray* v. *First Ave., etc., Co.,* 148 Ind. 599.

Where judgment is recovered on a note, the note is merged in the judgment, and the judgment, and not the original evidence of the debt, is the foundation on which to rest any additional proceeding for the collection of the debt. *Cissna* v. *Haines,* 18 Ind. 496. A decree of foreclosure of a mortgage merges the mortgage as a cause of action, but not the special lien of the mortgage. *Evansville Gas Light Co.* v. *State, ex rel.,* 73 Ind. 219, 38 Am. Rep. 129. The general rule is that a foreclosure and sale of mortgaged premises invests the purchaser with the fee simple, and the mortgage becomes extinct. *Murdock* v. *Ford,* 17 Ind. 52.

The title passes when the deed is made. The judgment of foreclosure, with or without a sale thereunder, except a sale consummated by a deed, does not discharge the lien. *Davis* v. *Langsdale,* 41 Ind. 399.

The assignment of a judgment carries the debt, and with it all rights, and remedies for its recovery or collection. *Bolen* v. *Crosby,* 49 N. Y. 183.

The assignment of a debt secured by a lien carries the lien. *Forwood* v. *Dehoney,* 68 Ky. 174.

The assignment of a judgment on a note secured by mortgage carries with it to the assignee the mortgage lien for the amount reduced to judgment. *Applegate* v. *Mason,* 13 Ind. 75.

Alden *v.* White.

In *Lapping* v. *Duffy*, 47 Ind. 51, it was held that when a judgment is rendered upon notes, and for the foreclosure of a mortgage given to secure their payment, the lien of the mortgage continues, and that a part of such a judgment may be assigned and the parties owning the several parts thereof may unite in an action to enforce the payment. See, also, *Teal* v. *Hinchman,* 69 Ind. 379; *Pattison* v. *Hull,* 9 Cow. 747.

On the subject of the order of priority, where all of a number of notes secured by mortgage have been assigned separately to different persons by the mortgagee, who has not retained any of the notes himself, it is said in Pomeroy, Eq. Jurisp. (2d ed.), §1201: "Where all the notes stand on the same footing—that is, they are all payable at the same time—the equities of all the assignees are equal, and there is no preference or priority among them in enforcing the security of the mortgage. All the assignees are entitled to a *pro rata* share of the proceeds of the mortgaged premises, in case there is not sufficient to pay all the notes in full. * * * Where the notes, payable at different dates, are assigned by the mortgagee to different persons, either at the same or different times, and either with or without an accompanying assignment of the mortgage, the following may be regarded as the prevailing general rule determining the right of the respective assignees: Since the assignment of each note is a *pro tanto* assignment of the mortgage, the holders of the successive notes are regarded as being exactly in the situation of holders of successive mortgages upon the same land; their equities among themselves, and their rights to enforce the security of the mortgage, are not equal; they are entitled to priority in the mortgage security of their respective notes according to the order of time in which such notes become due and payable. The order of maturing among the notes fixes the order of preference and priority among the respective assignees." The rule so stated, which is commended in a note to the

section from which we have quoted, has obtained in this State. After stating various other rules prevailing in some of the states as to the rights of assignees among themselves, the learned author says (§1203) that "a different principle may operate between an assignee and the mortgagee. When the mortgagee assigns one or more of the notes, and retains the remainder of the series, it is generally held that the assignee is entitled to a priority of lien as against the mortgagee, with respect to the note or notes so transferred; and this rule operates without regard to the order in which the notes held by the two parties mature." In a note to this statement in the text of the section last mentioned, it is said: "The mortgagee having transferred the note and received the consideration therefor, it would be inequitable for him to deprive the assignee of any part of its value, by insisting upon a priority or even an equality of right in sharing the insufficient proceeds."

In Jones, Mortgages (5th ed.), §1701, it is said: "The equity arising from priority of assignment where this equity is held to give a preference, is generally regarded as paramount to the equity arising from the maturity of the notes as against the assignor; but as between different assignees, the equity arising from priority of maturity is paramount. Generally it may be said the effect of an assignment of one of the mortgage notes is to carry a *pro rata* interest in the security, subject to the paramount claim of notes previously due; and to give no right based upon the priority of assignment, except as against the assignor. * * * Where a holder of a mortgage assigns a part of it, although he warrants only the existence of the debt at the time of the transfer, it would be contrary to good faith to permit him, after receiving the money for this part of the claim, to come into competition with his assignee, if the property prove insufficient to pay the claims of both. Unless the intention be plainly declared on the face of the assignment that the assignee is to share *pro rata* in the secur-

ity with the assignor, the equitable construction of it is that it must in the first place be applied for the payment of the part of the debt which was assigned."

In *State Bank* v. *Tweedy,* 8 Blackf. 447, 46 Am. Dec. 486, the question being an open one in this State, the court sought to place its solution upon the nature of the mortgage contract, the meaning of which was regarded as depending much upon the law of the remedy or remedies upon the notes and mortgage; and the case being one for the foreclosure of a mortgage given to secure the payment of a number of notes, all of which had been assigned, some at one time to one person, and the others at a later time to another person, and were so held, it was decided that the effect of the assignment of one of the notes so secured was to carry a *pro tanto* interest in the mortgage security, subject to the paramount claim of notes previously due; the different instalments of the mortgage being regarded as so many successive mortgages, each having priority according to its time of becoming payable. In that case the notes assigned latest, being those which came due earliest, were given priority over the others. See, also, *Stanley* v. *Beatty,* 4 Ind. 134; *Hough* v. *Osborne,* 7 Ind. 140; *Harris* v. *Harlan,* 14 Ind. 439; *Murdock* v. *Ford,* 17 Ind. 52; *Minor* v. *Hill,* 58 Ind. 176, 26 Am. Rep. 71; *People's Sav. Bank* v. *Finney,* 63 Ind. 460; *Doss* v. *Ditmars,* 70 Ind. 451; *Shaw* v. *Newsom,* 78 Ind. 335; *Carithers* v. *Stuart,* 87 Ind. 424.

In *Wilber* v. *Buchanan,* 85 Ind. 42, it was held that where a mortgage is given to secure payment of a number of notes maturing at different dates, executed by the mortgagor to the mortgagee, and the notes last maturing have been assigned, while the notes first maturing have been retained by the mortgagee, the assignee is entitled to priority in the mortgage security. In that case the notes last maturing were not indorsed by the mortgagee, but were bequeathed as a legacy by his last will and testament, and

were delivered accordingly by the administrator of his estate, while the notes first maturing became a part of the deceased mortgagee's estate.

In *Parkhurst* v. *Watertown, etc., Co.,* 107 Ind. 594, the payee of three notes maturing at different times, and secured by chattel mortgage, retaining the note first maturing, assigned the other two by indorsements to different assignees. The court approved the doctrine that an indorsee of some of a number of notes so secured is entitled, in equity, to payment out of the mortgaged funds in preference to the notes retained by the mortgagee and assignor, although the notes so assigned fall due after those retained by the mortgagee. It was said: "The equitable rule rests upon the theory that as between the assignor and the assignee, by the assignment of the notes the assignor assigns the mortgage not *pro rata,* but *pro tanto;* that is, he does not assign a proportionate share of the mortgage security, but assigns so much of the security as shall be adequate for the payment of the note or notes which he assigns;" also, that the payment of the assignor's "first mortgage is postponed to the payment of the subsequent mortgages of the assignees. Equity says to the mortgagee and assignor, in such a case, that, having assigned the notes subsequently becoming due, he shall not enforce his prior lien as against his assignees holding the subsequent liens." But it was held that in such case the relation of the liens held by the assignees to each other—the priority as between them— was not changed; it being assumed, the contrary not appearing, that in the case in hand the assignments were made at the same time; that these subsequent liens so assigned would be adjusted as though there had been no prior lien in favor of the mortgagee, thereby giving the notes held by the assignees preference the one to the other according to the dates of their maturity. See *Horn* v. *Bennett,* 135 Ind. 158, 24 L. R. A. 800; *Baugher* v. *Woollen,* 147 Ind. 308, 311. See, also, *Richardson* v. *McKim,*

Alden *v.* White.

20 Kan. 346; *Mechanics Bank* v. *Bank of Niagara,* 9 Wend. 410.

When judgment had been obtained by the mortgagee on one of a number of notes secured by the mortgage, and he had assigned this judgment, it was held that the assignee was entitled to priority according to the date of the note on which the judgment was rendered; the judgment, for the purposes of determining the question of priority, taking the place of the note upon which it was rendered. *Funk* v. *McReynolds,* 33 Ill. 482.

If one holding a vendor's lien on land assign some of the purchase-money notes, he will not be heard to assert the priority of his claim for the payment of the notes retained by him as against his assignee. "In that respect the rights of the parties having notice would be in no material respect different from what they would have been had the debt been evidenced by separate notes and secured by a mortgage on the land." *Yetter* v. *Fitts,* 113 Ind. 34.

If the assignor can not assert either priority or equality for his retained portion of the debt as against his assignees to whom he has transferred other portions maturing later than the portion so retained, he ought not to be considered as having any such privilege, as against his assignees, where all portions of the debt—those retained and those assigned—have the same time of maturity, and all the assigned portions were assigned by the mortgagee at one time.

The principles expounded and applied in the authorities to which we have freely referred lead to a conclusion not in agreement with the decision before us for review. When the judgment plaintiff assigned twelve-fifteenths of the judgment—one-fifteenth thereof to each of the twelve assignees—retaining himself three-fifteenths thereof, he transferred to each of the assignees the lien upon the mortgaged land *pro tanto,* and not *pro rata,* as between the assignor and each of the assignees. The transfers being made

at the same time, and the several portions of the judgment debt transferred not being payable at different times, but all being due and payable at once, there could be no preference or priority between the assignees themselves, but, as between them and the assignor, each was entitled to have his one-fifteenth part of the judgment paid out of the proceeds of the land before the application of any portion of such proceeds to the payment of the portion of the judgment retained by the assignor. The assignees were entitled each, as against the assignor, not to one-fifteenth portion of the security, but to so much of the security as would suffice to pay off his one-fifteenth portion of the judgment. It can not be questioned that the assignment of the entire judgment would have carried the entire lien. So we think the assignment of a portion of the judgment carried the lien without priority as between the assignees, but it would be as inequitable to deprive the assignees of priority against the assignor as it would be to deprive the assignee of one of the notes secured by the mortgage of priority in the mortgage security as against his assignor.

When eight of these twelve assignees so standing on an equality as to each other assigned their several shares of the debt to the appellant, she received the same remedy for the enforcement of the debt that was held by her assignors before the assignment. The lien which each of them held passed to her, and she was placed on an equality with the other four of the twelve assignees. She then had a right to assert her interest in the debt against the land, with priority as against the judgment plaintiff, but *pro rata* as between her and the four assignees who still retained their interests acquired by the assignment. When these four assignees reassigned to the judgment plaintiff, each of them transferred all his interest in the debt and lien. The appellant suffered no loss or detriment, and was not placed in any different relation to the portion of the debt not held by her by reason of this reassignment. She had no equitable

ground, that we perceive, for claiming to be put in any better situation by this reassignment in which she had no part, and which was quite independent of her. She can not urge any potent reason why the judgment plaintiff should not be in the same situation by reason of the retransfer to him of the four shares in the judgment that would have been rightfully occupied by any other person to whom these four shares might have been transferred by assignment. To decide otherwise would be to depreciate the value of these four shares without reason. So, it would seem as to twelve-fifteenths of the judgment debt there is a priority of lien over the other three-fifteenths, and that the appellant and the judgment plaintiff have equal equitable rights, except as to the three-fifteenths of the judgment never assigned, as to which the judgment plaintiff should be postponed to such portion of the proceeds of the foreclosure sale as may remain after payment of the twelve-fifteenths held by him and the appellant; and if the proceeds be not sufficient to pay the entire twelve-fifteenths of the judgment, then the appellant and the judgment plaintiff should share therein in the ratio of eight to four; the judgment plaintiff taking nothing as to three-fifteenths of the judgment held by him.

The fact that each of the twelve assignees paid full value for the several shares of the judgment assigned by the judgment plaintiff is not an immaterial matter in the consideration of the equitable relation of the assignor and the assignees; but we can not see that the fact that upon the reassignment the four assignees accepted from the judgment plaintiff a less sum than the value of the shares reassigned is a matter which concerns the appellant, or affects her relation to the judgment plaintiff, or gives her any new priority or any preference with reference to the four shares reassigned. Nor can we see how the voluntary incurring of expense by the twelve assignees in defending for their own protection against an unauthorized tax sale gave them

Alden *v.* White.

or either of them a larger interest in the judgment or affected the right of priority which they already had against their assignor, or how the appellant can claim any greater benefit by reason of such expenditure, in addition to that of sharing equally in the right of priority with the four asignees who did not assign to her. In incurring such expense the twelve assignees did not pay off any charge on the land which the judgment plaintiff was bound to discharge for or with such assignees. If he was incidentally benefited by such expenditure, and could be under any obligation therefor, it would be a personal obligation, either conventional or merely moral, to the persons who incurred the expense, who thereafter transferred simply their interests in the judgment and the security—some of them to the appellant, and others to the judgment plaintiff. The appellant acquired by the assignments to her merely eight-fifteenths of the judgment, with the security therefor held by her assignors, while the judgment plaintiff acquired by reassignment four-fifteenths of the judgment, with like security, and continued to hold his three-fifteenths, with the subordinate lien therefor on the land.

Judgment reversed, with instruction to modify the judgment in accordance with this opinion.

## On Petition for Rehearing.

Black, J.—The learned counsel for the appellees call attention again to a portion of their argument on the original hearing, and insist that James B. White did not assign to anyone a definite sum of the amount of the judgment, and gave no guaranty or warranty that his assignees, or any of them, would or could collect in full the parts of the judgment assigned by him to them, and did not assign to them, or any of them, the notes or the mortgages given to secure their payment, or any part or interest in the same,

all of which had been merged in the judgment; that an
assignment of a judgment simply transfers the judgment
to the assignee, and no liability as to the solvency of the
judgment debtor attaches against the assignor, in the ab-
sence of fraud or express stipulation—referring again to
authorities cited in the original brief for the appellees,
some of which were cited in our original opinion. It is
conceded by counsel that the principle of law stated by us
is abstractly correct, but they insist that, for such reasons,
it is not applicable to this case.

Our opinion does not proceed upon the ground that the
notes or the mortgages are not merged as causes of action
in the judgment and decree of foreclosure, or that the stat-
utory personal liability of an assignor of promissory notes
to his assignee exists in favor of the appellant against
James B. White. Our statute (§617 Burns 1901) pro-
vides that all final judgments of the supreme and circuit
courts for the recovery of money or costs shall be a lien
upon the real estate and chattels real, liable to execution in
the county where the judgment is rendered, for the space
of ten years, and no longer, exclusive of the time during
which the party may be restrained from proceeding thereon
by an appeal or injunction, or by the death of the defend-
ant, or by the agreement of the parties of record. It is
provided by §687 Burns 1901 that after the lapse of ten
years from the entry of judgment or issuing of an execu-
tion, an execution can be issued only on leave of court upon
motion. There was no judgment at law against Archange
Godfrey, but there was a decree of foreclosure of the mort-
gage on her real estate, and no property of hers except the
mortgaged real estate could be subjected to payment of the
judgment. There was a judgment at law against James
R. Godfrey, the lien of which on his real estate, if he had
real estate, was not extinguished, and execution could have
been obtained for the satisfaction of the judgment over at
law. In this proceeding it was not sought to enforce the

judgment over against the estate of James R. Godfrey, which was insolvent.

*Moore's Appeal,* 92 Pa. St. 309, cited in a text-book to which counsel for the appellee refer, related to successive assignments of fractional parts of a judgment at law; the assignor not retaining any part of the judgment. The decision was based on *Donley* v. *Hays,* 17 Serg. & Raw. 400, relating to successive assignments of parts of a mortgage debt, wherein a rule was announced not in agreement with the doctrine which obtains in this State. It is said in the opinion in *Moore's Appeal, supra:* "We see no reason for applying a different rule in case of the assignment of different parts of the same judgment. Every equitable principle in regard to the application of the fund applies with equal force, whether the lien divested be a judgment or a mortgage."

In the case at bar the court dealt with the subject of priorities as to the specific lien of the mortgage upon the mortgaged real estate alone. We were not called on to decide upon any question as to the distribution of the proceeds of real estate sold or to be sold under execution on a judgment at law, as between the judgment plaintiff and assignees of parts of the judgment. The specific liens of the mortgages were not merged in the judgment of foreclosure. The continuing mortgage liens constituted a security for the judgment debt, and the assignment of parts of the judgment carried to the assignees this security. It is not contended that they have not priority over subsequent encumbrancers, but it is insisted that they should enjoy the benefit of their liens pro rata with the assignor, the judgment plaintiff. We think the doctrine of equity stated in our original opinion is applicable; that it would be inequitable to permit the assignor, where the property subject to the lien is not sufficient to pay the entire judgment, to be placed upon an equality with his assignees; but that he should be regarded as having transferred the specific

lien of the mortgage to the extent needed to satisfy the assigned portion of the debt secured thereby, in preference to the portion retained and never assigned by him. Petition overruled.