THE STATE LIFE INSURANCE COMPANY *v.* CAST ET AL.

[No. 27,013.  Filed March 22, 1938.  Rehearing denied
April 27, 1938.]

*George Batchelor, Hiram D. Kehn* and *Jessup & Strode,* for appellant.

*Forrest E. Jump* and *Louis B. Ewbank,* for appellees.

TREMAIN, J.—The American Trust Company of Kokomo, Indiana, on March 2, 1925, loaned to one Cast $4,000 evidenced by two promissory notes, one for $500 and the other for $3,500, both due on the same date, and secured by a mortgage on real estate not of sufficient value to pay and satisfy the mortgage loan. Shortly thereafter, both of these notes, together with the mortgage, were assigned by indorsement to the appellant. Within a short time thereafter, the $500 note was reassigned by indorsement by appellant to the American Trust Company, which company thereafter sold and assigned it to appellee, Edward S. Lindley.

Thereafter, the appellant filed a suit in the Howard Circuit Court to foreclose the mortgage given to secure its $3,500 note then due, and made all interested persons parties defendant. Lindley appeared and filed answer and a cross-complaint to foreclose the mortgage in satisfaction of his $500 note, also past due. It is alleged in both the complaint and cross-complaint that each party holds a first lien on the real estate. Upon the trial, evidence was introduced tending to show that, at the time the appellant purchased the $3,500 note, an agreement was executed between it and the Trust Company, reciting that the $3,500 note should be superior to the $500 note. Also, it is contended by the appellant that it did not, in fact, purchase the $500 note, but the same was assigned

to it by mistake and without consideration; that when the mistake was discovered, the note was reassigned to the Trust Company. Before the date of the trial Lindley had been declared a person of unsound mind, and was not qualified to testify. His wife and attorney testified that, when the $500 note was sold to Lindley, there was no indorsement on it indicating that it was inferior to the $3,500 note; also, that Lindley had no notice of such agreement.

The question in issue in the trial court was whether one of the holders of the respective notes had a superior lien over the other, and whether or not the proceeds derived from the sale of the mortgaged real estate should be applied *pro tanto* or *pro rata* in the satisfaction of the notes. The trial court held that the appellant and Lindley should share *pro rata,* according to the amount of their respective judgments. The court made a special finding of facts and stated its conclusions of law thereon. The appellant excepted to the conclusions of law, and filed a motion to amend the special findings of fact and conclusions of law, and a motion for a new trial, both of which motions were overruled. The substance of the court's findings is substantially the facts recited herein.

The appellant contends that it was entitled to have a foreclosure of the mortgage, sale of the property, and an application of the proceeds derived therefrom applied to the satisfaction of its $3,500 note before any part thereof should be applied to the satisfaction of the $500 note. Appellant admits that both notes matured at the same time, but contends that by reason of the fact that its note was first assigned, the law gives to it a preference over the remaining note. It also contends that it is entitled to a preference by virtue of the preferential agreement heretofore mentioned.

It is well settled by numerous decisions of this court

that a mortgage given to secure two or more notes, maturing at different dates and assigned to different holders, will be regarded as so many successive mortgages, and the holder of the note first due will have priority, and the holders of the remaining notes will have priority in the order in which the notes mature, and on foreclosure, the proceeds of the sale will be applied *pro tanto*. Also, it is well settled in this state that, where a mortgage is given to secure two or more notes maturing at the same date, neither note has preference over the other, and the proceeds of the sale of the mortgaged premises will be applied *pro rata* upon the notes. In support of these propositions, among the many decisions in this state, are the following: *State Bank* v. *Tweedy* (1847), 8 Blackf. 447; *Minor* v. *Hill, Adm'r* (1877), 58 Ind. 176; *Peoples Savings Bank, etc.* v. *Finney* (1878), 63 Ind. 460; *Doss* v. *Ditmars* (1880), 70 Ind. 451; *Gerber* v. *Sharp* (1880), 72 Ind. 553; *Carithers* v. *Stuart* (1882), 87 Ind. 424; *Parkhurst* v. *The Watertown Steam Engine Company* (1886), 107 Ind. 594, 8 N. E. 635; *Horn* v. *Bennett* (1893), 135 Ind. 158, 34 N. E. 321, 34 N. E. 956; *Alden* v. *White* (1904), 32 Ind. App. 671, 66 N. E. 509, 67 N. E. 949; *Metelmann* v. *Buchanan* (1935), 101 Ind. App. 150, 198 N. E. 460.

In *Doss* v. *Ditmars, supra,* a situation is presented somewhat similar to the instant case. A mortgage was given to secure three promissory notes, each maturing on a different date. These notes were assigned to different parties, and the question arose as to whether or not the holders of the notes would be entitled to a preference in the proceeds of the sale of the real estate by virtue of the date of maturity of the notes, or by virtue of the date of assignment. In discussing that question, the court said (p. 458):

"Under the law of this State, as settled by numerous decisions of this court, a mortgage given to secure two or more notes, maturing at different dates and assigned to different holders, must be considered as if there were as many different successive mortgages as there were of such notes, and the holder of the note first due will have priority, and the holder of the other note or notes will come in, in the same order in which such note or notes matured."

In that case the last note due was assigned before the first note maturing was assigned. It was contended by an answer filed by the holder of the last note due, but first assigned, that by reason of the assignment, it had preference over the first note due, but assigned later. The court stated that the fact that the assignee of the first note due may have had notice that the other note had been assigned, would not change the rule that the liens attached as of the maturity of the notes.

In *Horn* v. *Bennett, supra,* a mortgage was given to secure the payment of a debt evidenced by seven notes maturing at different times. The mortgage contained a stipulation that, on the failure to pay any one of the notes at maturity, all notes should become due and payable, and the mortgage foreclosed. Each of these notes had been assigned by the payee, the first five to the appellee Bennett, and the last two to become due to the appellant. Bennett, the holder of the note first to become due, on default of payment, filed suit to foreclose. Pursuant to the stipulation in the mortgage, the holder of the last notes to become due filed a cross-complaint to foreclose the mortgage, and alleged that by virtue of said provision, all notes matured at the same time, and he was entitled to share *pro rata* with Bennett, the holder of the first note to mature. A situation is here present whereby the maturity date named in the several notes is changed by reason of the payor's default in paying the first note to fall due. The question arose

as to whether or not such default would have the effect of changing the priority shown upon the face of the notes by virtue of the date of maturity named therein.

When the note first falling due, pursuant to the date named in the note, is sold and assigned, it is held, in that case, that the assignee is not required to investigate and ascertain whether or not a later due date note has been assigned previously, and the court held that the rights of the parties were not changed by the default of the mortgagor in the payment of the first note, or by the date of assignment of the note. The discussion of the court concluded that the maturity of the notes, by reason of default in making the prior payment, was not such a falling due as should change the rule for the application of the security; that the maker of the notes did not have it in his power to change their priority by defaulting in the payment of the first note to become due. Upon a petition for a rehearing in that case, the court further said (p. 166):

"The rule in this State is not affected by a previous transfer of the notes last due."

*Alden* v. *White, supra,* discusses the question at length, and, on page 677 of the report, will be found a quotation from Pomeroy, Eq. Jurisp. (2d ed.), §1201, in which the rule is laid down that the priority in the mortgage security is controlled by the due dates named in the notes, and is not controlled by the respective assignments thereof.

In some of the cases cited above a situation is presented whereby the payee in several notes, secured by one mortgage, sold a note last falling due, but retained all other notes as his own. In such case it is held that the note assigned has preference.

It seems to be settled law in this state that the priority of the holders of several notes secured by one mortgage is determined by the maturity date named in the notes.

In this appeal, however, the appellant insists that the appellee, Lindley, had notice of the preferential agreement executed by the Trust Company and the ██ appellant, and was bound to know that pursuant to that agreement the appellant's note had first claim upon the mortgaged property. This was a question of fact before the trial court, and whether or not that court embodied in its special findings all facts embraced in the issues before it is unimportant under the view taken by the court. That is, that the date of the assignment is not controlling in this case.

The appellant, at page 8 of its reply brief, insists that this court should consider the weight of the evidence, because this is an equity case. To use the appellant's language:

"It is, of course, true that this court may detour this question of fact as to the existence of a subordination endorsement upon this note, if it desires so to do, by falling back upon the rule that it will not weigh conflicting testimony . . ."

It then cites Sec. 2-3229 Burns' Ind. St. 1933 (§467 Baldwin's 1934), which provides, in equity cases, for an assignment of error on the ground that the judgment is not fairly supported by the evidence, or is clearly against the weight of the evidence. It should be sufficient to say that, if the case were one of purely equitable cognizance, and the evidence were entirely documentary, the statute may apply, but where there is oral testimony, as in this case, the statute does not apply, and this court is not authorized to weigh conflicting evidence. For a thorough discussion of this statute, attention is directed to *Parkison* v. *Thompson* (1905), 164 Ind. 609, 73 N. E. 109, beginning at point 1 on page 617 and ending on page 627. Whether a refusal of this court to weigh oral testimony in an equity case should be designated as a "detour" is unimportant, but it is important that well-known and settled principles be

preserved for the orderly disposition of matters before the court.

It is clear from the record, including both the evidence and the findings of the court, that the trial court's conclusion is correct, and that the notes should be paid *pro rata*.

Finding no reversible error, the judgment is affirmed.